The plaintiff, Noah Jerome Hurst, appeals from a summary judgment for the defendants, Nichols Research Corporation ("the corporation") and its chief executive officer, Chris Horgen, in this action seeking damages for breach of contract and fraud. We affirm.
The material facts in this case are undisputed. In the fall of 1983, Hurst, a mechanical engineer, entered into employment negotiations with Horgen for a management position with the corporation, a Huntsville-based company that provides advanced technical services to various government agencies. Those negotiations focused primarily on the subject of stock options that the corporation provided to management level employees. At some point during the negotiations Horgen showed Hurst a handwritten chart containing a breakdown as to the number of shares that could be purchased by employees at different management levels, based on the amount of business developed for the corporation.
After the negotiations were completed, Horgen presented a letter to Hurst, dated December 1, 1983, offering him employment on certain terms. That letter specified, among other things, the position that *Page 965 
Hurst would assume with the corporation, the salary that he would be paid, the date on which his employment would begin, the amount of a one-time bonus that he would receive to cover certain expenses, the name of the individual who would be his immediate supervisor, and the terms governing his purchase of the corporation's stock. Hurst asked Horgen to make certain changes to the letter with regard to the dates on which he could purchase the corporation's stock. Horgen made those requested changes. In its final form, the corporation's letter read as follows:
 "Nichols Research Corporation, Inc., is pleased to make you a formal offer of employment as Director of Special Programs Directorate under the direction of Rex Lewis. The salary in this position is $60,507.20 per year with a start date of 9 January 1984. NRC will provide a one time bonus of $365.00 per month during the first four months of employment to cover previous employment expenses. "You will be granted a stock option for 12,000 shares of NRC stock over a five year period. The [option] may be exercised as follows:
 Price Per Timeframe for Shares Share Purchase
 4,000 $3.40 1/9/84-8/30/85 4,000 $3.40 9/1/85-8/30/86 1,000 $3.40 9/1/86-8/30/87 2,000 $4,60 9/1/87-8/30/88 1,000 $4.60 9/1/88-8/30/89
 "This stock option is made in consideration of your continued employment with the Corporation. In the event you terminate employment with NRC, the stock option will be void. You will, however, be allowed to retain the shares purchased prior to your termination date. This option must be approved by the Alabama Securities Commission; however, NRC does not anticipate any problems. Additional stock options will be considered after your business base grows to above $500,000.
 "If this offer is acceptable please sign and return the attached acceptance letter prior to December 7, 1983.
 "If you have any questions please contact the undersigned."
Hurst also received a typed version of the benefits chart that Horgen had shown him during the negotiations. The chart, which was entitled "NRC's Management Level Benefit Guidelines," specifically and clearly provided: "These are not hard rules or benefit packages at NRC." The chart was not attached to the letter offering employment. Instead, it was provided to Hurst along with a cover letter stating: "Enclosed please find a copy of the information we discussed." The back of the chart contained certain handwritten calculations that had been made by Horgen. Hurst accepted the corporation's offer of employment by letter dated December 7, 1983:
 "I am pleased to accept Nichols Research Corporation's offer of employment as stated in your letter dated 1 December 1983."
Hurst later sued the corporation and Horgen, alleging that Horgen had promised him during the negotiations that he would be eligible to purchase more stock than was specified in the December 1, 1983, letter and that Horgen had failed to keep that promise. The corporation and Horgen moved for a summary judgment, arguing that the parol evidence rule barred evidence with respect to the pre-contract negotiations and that they were entitled to a judgment as a matter of law as to the contract claim based on the evidence that would be admissible at trial. The defendants *Page 966 
maintained that a summary judgment as to the fraud claim would be proper because, they argued, Hurst could not have justifiably relied on any misrepresentation that might have been made by Horgen with regard to the stock options provided by the corporation. The defendants also argue that there was no evidence that Horgen intended to deceive Hurst, even assuming that he promised Hurst additional stock options. The trial court granted the defendants' motion, and this appeal followed.
With regard to the contract claim, the parties are at issue over whether the parol evidence rule applied so as to bar evidence that, Hurst says, would have established that Horgen made a promise during the contract negotiations to allow him to purchase more of the corporation's stock than was specified in the December 1 written offer. Hurst maintains that he and Horgen intended for the benefits chart, which on the back contained certain handwritten calculations made by Horgen as to the number of shares that Hurst claims he was eligible to purchase, to be a part of the corporation's offer. Hurst argues that these calculations support his claim that Horgen guaranteed him an absolute right to purchase additional stock in the corporation. Horgen testified that he made the calculations on the back of the chart to show Hurst the number of shares that he "might" be eligible to purchase after he had worked a certain number of years for the corporation and had generated sufficient business. Hurst takes the position that his written acceptance of the terms specified in the December 1 letter, which specifically stated that "[a]dditional stock options [would] be considered after [Hurst's] business base [grew] to above $500,000" (emphasis added), did not require application of the parol evidence rule so as to render the chart and his explanation of the pre-contract negotiations inadmissible. Quoting isolated portions of this Court's opinion in Hibbett Sporting Goods, Inc. v. Biernbaum, 375 So.2d 431,435 (Ala. 1979), Hurst argues that "[t]o the extent . . . that [a written contract] contradicts the actual agreement of the parties, it is simply untrue"; that "[p]aper and ink possess no inherent power to cause statements to be true when they are actually untrue"; that "[t]he parol evidence rule does not prevent the admission of contradictory evidence to establish the truth"; and that the parol evidence rule does not "prevent the enforcement of contracts actually made."
The defendants do not disagree with these particular statements from Hibbett; they argue, instead, that the statements must be read in the proper context and with a full understanding of the holding in Hibbett. Hibbett, the defendants say, is direct authority for upholding the trial court's application of the parol evidence rule in the present case and, thus, its judgment with respect to Hurst's contract claim. We agree with the defendants' interpretation of Hibbett
and with the trial court's disposition of the contract claim.
The following excerpts from Hibbett are applicable to the present case:
 " 'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' 3 A. Corbin, Contracts, § 573, at 357 (1960), cited in Richard Kelley Chevrolet Co., Inc. v. Seibold, 363 So.2d 989, 993
(Ala.Civ.App. 1978).
". . . .
 "As stated by this Court in Sellers v. Dickert, 185 Ala. 206, 213, 64 So. 40, 43 (1913), cited in Seibold, supra:
 " 'The general doctrine [of the parol evidence rule] necessarily rests upon the existence of a valid written instrument expressing the obligations assumed by or imposed upon the parties. The implication, at least, is that the executed writing contains all stipulations, engagements and promises the parties intend to make or to assume, and that all previous negotiations, conversations, and parol agreements are *Page 967 
merged in the terms of the instrument.' [Emphasis in Sellers.]
 "Where there exists doubt that the written agreement was ever intended to reflect the full agreement of the parties, the courts of this State have not hesitated to admit contradictory parol evidence of their true agreement. See I.H.M., Inc. v. Central Bank of Montgomery, [340 So.2d 30 (Ala. 1976)]; Alabama Power Company v. Pierre, [236 Ala. 521, 183 So. 665 (1938)]; and Richard Kelley Chevrolet Co., Inc. v. Seibold, supra. See, also, Mayo v. Andress, 373 So.2d 620 (Ala. 1979).
". . . .
 "The parol evidence rule then serves to prevent parties from renegotiating their agreements once integrated in a completed writing and, also, leaves the question whether the writing is in fact a completed integration to the trial judge to determine as a matter of law. It should be noted, however, that on this issue — whether a writing is a complete and accurate integration of the agreement of the parties — there is no parol evidence rule to be applied inasmuch as a writing cannot prove itself. A written document by itself, regardless of how long and detailed it may be, cannot prove that the parties have assented to it as the complete and accurate integration of their contract. Seibold, supra, at 993, citing 3 A. Corbin, Contracts, § 573 at 360 (1960). This point, in the context of the parol evidence rule, is emphasized by Wigmore:
 " '. . . it needs to be insisted, in opposition to the popular and natural view which tends to thrust itself forward at trials, that a writing has no efficacy per se, but only in consequence of and dependence upon other circumstances external to itself. The exhibition of a writing is often made as though it possessed some intrinsic and indefinite power of dominating the situation and quelling further dispute. But it needs rather to be remembered that a writing is, of itself alone considered, nothing, — simply nothing. It must take life and efficacy from other facts, to which it owes its birth; and these facts, as its creator, have as great a right to be known and considered as their creature has. . . . There is no magic in the writing itself. It hangs in mid-air, incapable of self-support, until some foundation of other facts has been built for it.' Evidence, § 2400, at 5 (1940). [Emphasis added in Hibbett.]
 "The question whether the parties have assented to a writing as a complete and accurate integration of their contract is ultimately one of intent and must be determined from the conduct and language of the parties and the surrounding circumstances. The written document alone is insufficient. Indeed, the very testimony that the parol evidence rule is supposed to exclude is often, if not always, necessary before a court can determine that the parties have agreed upon the writing as a complete and accurate statement of their contract. The evidence that the rule seems to exclude must be heard and weighed before it can be excluded by the rule. 3 A. Corbin, Contracts, § 582 at 450 (1960). See, also, Wigmore, Evidence, § 2430(2). The paradox, however, is only apparent. Parol evidence of the alleged negotiations leading to the written agreement is received by the trial court only on the issue of whether the offered writing was mutually assented to as a complete integration. If, despite the received testimony, the court finds that the writing was mutually assented to as a complete integration, it thereby determines that the negotiations testified to were discharged and nullified by the parties themselves. 3 A. Corbin, Contracts, § 582 at 450, note 80."
375 So.2d at 434-36.
The record in the present case indicates that the trial court found that the corporation's December 1 written offer of employment was mutually assented to by Hurst and Horgen as the complete and accurate integration of Hurst's employment *Page 968 
contract and, therefore, that the negotiations leading up to that offer were discharged and nullified by the parties themselves. The evidence supports that finding. The December 1 letter, which followed extensive negotiations between Hurst and Horgen, is specific and clear with regard to the subject of stock options. Horgen stated in the letter that Hurst could raise any questions that he had concerning the terms of the offer, and Hurst sought and obtained a modification as to the time frame within which he could purchase the corporation's stock. Given the ease with which the letter could have been further modified, the trial court was justified in concluding that Hurst and Horgen intended for it to completely and accurately reflect their agreement.
We note that Hurst's reliance on Hibbett is misplaced. InHibbett, as the defendants correctly point out, the parties to the contract stipulated that the written document evidencing their agreement was not a true and complete expression of their agreement. Simply put, the parol evidence rule was held to be inapplicable in Hibbett because the undisputed evidence showed that the parties had agreed that the written document they had signed did not reflect the truth. This Court reversed the judgment because the evidence clearly did not support the trial court's finding that the parties had mutually assented to the written contract as a complete and accurate integration of their agreement. It was in this context that this Court made the statements previously quoted and relied on by Hurst. Contrary to the facts presented in Hibbett, the facts here present the classic case for application of the parol evidence rule. As this Court noted in Hibbett:
 "Agreements are often the result of protracted negotiations during which terms are modified, or abandoned completely; but once the parties have completed their negotiations and have agreed upon a contract as evidenced by a writing, we are no longer interested in the history of their negotiations for purposes of determining what their agreement might have been had their negotiations proceeded differently. All their negotiations have then been merged into the written agreement and to the extent that the writing is complete and unambiguous, the prior negotiations are irrelevant for determining the terms of their agreement. Southern Guaranty Insurance Company v. Rhodes, 46 Ala. App. 454, 243 So.2d 717 (1971). They are irrelevant because they are of yesterday and can have no jural effect on what has taken place subsequently."
375 So.2d at 435.
Because the defendants made a prima facie showing that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law, and because Hurst did not present evidence creating a factual issue for resolution by a jury, the summary judgment for the defendants was proper as to the contract claim. Knight v. Alabama PowerCo., 580 So.2d 576 (Ala. 1991).
Hurst's fraud claim is based on allegations that Horgen induced him to accept employment with the corporation by promising him that he would be allowed to purchase more of the corporation's stock than was specified in the December 1 letter. This Court has held that the parol evidence rule does not apply to a claim based on allegations of fraud in the inducement, see Dixon v. SouthTrust Bank of Dothan, N.A.,574 So.2d 706 (Ala. 1990); therefore, under our standard for reviewing summary judgments, see Knight v. Alabama Power Co., supra, we must assume that Horgen promised Hurst additional stock options. However, even if that assumption is made, Hurst's claim alleging promissory fraud cannot be sustained without a showing of justifiable reliance. This reliance is defined as follows:
 " 'A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully understand the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed *Page 969 
his eyes to avoid the discovery of the truth" ' "
Withers v. Mobile Gas Service Corp., 567 So.2d 253, 255 (Ala. 1990), quoting Southern States Ford, Inc. v. Proctor,541 So.2d 1081, 1091-92 (Ala. 1989) (Hornsby, C.J., concurring specially).
The undisputed evidence shows that Horgen presented Hurst with a clear and specific letter offering him employment with the corporation on certain terms. That offer did not grant Hurst the absolute right to purchase additional shares. To the contrary, the letter stated that "[a]dditional stock options [would] be considered after [Hurst's] business base [grew] to above $500,000." (Emphasis added.) Hurst read the letter and even had Horgen make certain modifications with respect to when he could purchase shares from the corporation. Hurst specifically accepted the terms set out in the corporation's written offer of employment:
 "I am pleased to accept Nichols Research Corporation's offer of employment as stated in your letter dated 1 December 1983."
(Emphasis added.) Other than by closing his eyes to avoid discovering the truth, Hurst could not have failed to realize that Horgen's alleged absolute promise of additional stock was entirely different from the terms stated by Horgen in the December 1 letter. The terms set out in the letter with respect to Hurst's right to purchase more than 12,000 shares of the corporation's stock were open-ended and clearly contemplated a future evaluation as to Hurst's eligibility to purchase that additional stock. As a matter of law, Hurst did not justifiably rely on any promise that Horgen may have made with respect to the issuance of stock options. See Parsons v. Maine FidelityLife Ins. Co., 604 So.2d 342 (Ala. 1992); Boland v. Fort RuckerNational Bank, 599 So.2d 595 (Ala. 1992); Harrington v.Johnson-Rast Hayes Co., 577 So.2d 437 (Ala. 1991); andWithers v. Mobile Gas Service Corp., supra.
Because Hurst failed to rebut the defendants' prima facie showing that there was no genuine issue of material fact with regard to Hurst's allegation that he justifiably relied on a promise to provide him additional stock options, and that the defendants were entitled to a judgment as a matter of law, the trial court properly entered the summary judgment as to the fraud claim. Knight v. Alabama Power Co., supra. Therefore, we need not determine if a jury question was presented as to whether Horgen had a present intent to deceive Hurst at the time he allegedly made the promise to provide additional stock options. See Centon Electronics, Inc. v. Bonar, 614 So.2d 999
(Ala. 1993).
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and SHORES, JJ., concur.