Darren Rowan, M.D., sued Robert L. Bailey, Jr., M.D., and the Surgical Group of Florence, P.C. (collectively "Bailey"), alleging two counts of breach of contract and three counts of fraud, all in connection with an employment contract he had entered into with Bailey. The trial court entered a judgment as a matter of law in favor of Bailey on both breach-of-contract claims, but submitted the fraud claims to a jury. The jury returned a verdict in favor of Rowan on all three fraud claims, awarding him a total of $375,000 in compensatory damages and $150,000 in punitive damages. The trial court entered a judgment on that verdict, but in doing so reduced the punitive-damages award to $15,000. Because we hold that Rowan could not have justifiably[1] relied on the alleged misrepresentations, we reverse and remand.
 I.
Rowan graduated from medical school in 1988 and began his residency at the University of South Alabama Medical Center. During Rowan's last year of residency, Bailey had several meetings with him. The purpose of these discussions was to persuade Rowan to become an associate of Bailey's medical practice in Florence. In February 1993, Rowan and Bailey met with representatives from Florence Hospital (the "hospital"), to sign a recruitment agreement. This agreement established the obligations of the hospital in the event Rowan became Bailey's associate. Under the agreement, the hospital agreed to lend the doctors $12,500 a month as a guarantee of Rowan's gross cash receipts. Under the agreement, no payment would be made in any month in which Rowan's cash receipts equaled or exceeded $12,500. The hospital also agreed to pay Rowan a total of $26,000 in moving and relocation expenses and to pay Bailey $1,800 a month toward the expense of employing an additional physician. At this meeting, Rowan says, he asked Bailey what would happen if he generated more revenue than was stated in the agreement. Rowan says Bailey told him that he had no intention of making money off Rowan and that Rowan could keep "[a]nything . . . over what it takes to bring [him] up [to Florence]."
Several months later, Rowan received a proposed written employment contract from Bailey. That proposed contract provided in pertinent part:
 "3. Compensation. As compensation for his services, [Rowan] shall be entitled to a salary of $125,000.00 per year, payable at $5,208.33 bi-monthly, commencing on July 1, 1993. In addition, if [Rowan] remains employed by [Bailey] for the full one (1) year term *Page 506 and [Bailey] and [Rowan] agree to renew this contract for a second year and [Rowan] shall remain employed by [Bailey] at [Bailey's] corporate year end following the first anniversary date of this agreement, then [Rowan] shall be entitled to a bonus equal to the collected revenue attributable to [Rowan's] production, less one-half (1/2) of all expenses of [Bailey] for the same period.
 "[Rowan] specifically understands and agrees that all fees earned by him from the practice of medicine, including but not limited to deposition fees, expert witness fees and consultant fees, or any fees received from hospital or medical facility administrative work, excluding however any funds received on investments, are the property of [Bailey]. By execution of this Agreement, [Rowan] hereby assigns all such fees to [Bailey].
". . . .
 "19. Amendments. This Agreement shall not be modified or amended except by a writing signed by both parties."
(Emphasis added.)
Rowan thoroughly read the contract and discussed it with his family. Rowan asked Bailey about the language in the compensation clause. Rowan says Bailey told him that the bonus language was included so that "after a year there [would] be no buy-in to the corporation, [and that Rowan would] become a partner at that time." Rowan also asked Bailey why his compensation was listed as $125,000 rather than the $150,000 he had expected. He says Bailey told him that the $25,000 difference would be used to pay premiums for medical-malpractice insurance and that at the end of the year Rowan would receive any unused portion of that $25,000. In June 1993, Rowan signed the employment agreement.
Rowan moved to Florence and began practicing medicine as Bailey's associate. After several months, Rowan became dissatisfied and told Bailey that he was considering leaving. Although the plain language of the employment agreement provided that Rowan had to renew his employment contract for a second year in order to receive a bonus, Rowan alleges that Bailey told him that he would get a bonus regardless of whether he stayed for an additional year. In June 1994, Rowan notified Bailey that he would be leaving when his contract expired the following month. After he left, Rowan allegedly asked Bailey when he would get his bonus. Rowan says Bailey gave him a choice between getting an immediate check, based on the revenues actually collected from the first nine months and the estimated collection for the last three months, or waiting for a check based on the exact computation. Rowan says he opted to wait for the exact computation of collected revenues. After some time had passed, Rowan allegedly asked Bailey again for his bonus. According to Rowan, Bailey said that he did not owe Rowan anything and that any further inquiries should be directed to Bailey's attorney. Two weeks later, Rowan allegedly telephoned Bailey and asked him "why there had been a change of heart." Rowan says Bailey told him that he had never intended to pay Rowan a bonus and that "[t]he only reason [he] suggested it was that he had hoped that [Rowan] would change [his] mind and stay."
Rowan sued Bailey, alleging two counts of breach of contract and three counts of fraud, all in connection with the employment contract he had entered into with Bailey. Specifically, Rowan's contract claims alleged that Bailey had orally modified the employment contract so that the bonus would be paid regardless of whether Rowan stayed an additional year and so that Rowan would receive an additional $25,000, less the cost of medical-malpractice insurance. Rowan's fraud claims alleged (1) that Bailey had fraudulently represented that Rowan would receive his *Page 507 
bonus regardless of whether he continued his employment for another year; and (2) that Bailey had fraudulently induced Rowan into signing the employment agreement by telling him that he did not intend to make money off him and that any revenue generated by Rowan in excess of $150,000 would be Rowan's bonus. The trial court entered a judgment as a matter of law in favor of Bailey on both breach-of-contract claims, but submitted the fraud claims to the jury. The jury returned a verdict in favor of Rowan on all three fraud claims, awarding him a total of $375,000 in compensatory damages and $150,000 in punitive damages. Bailey moved for a judgment as a matter of law, a new trial, or a remittitur of damages. The trial court reduced the punitive-damages award to $15,000 and entered a judgment in favor of Rowan.
 II.
Bailey argues that the trial court erred by denying his motion for a judgment as a matter of law. "A judgment as a matter of law is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ and the moving party is entitled to a judgment as a matter of law." LocklearDodge City, Inc. v. Kimbrell, 703 So.2d 303, 304 (Ala. 1997) (internal quotations and alterations omitted). In reviewing the denial of a motion for a judgment as a matter of law, this Court must view all evidence in the light most favorable to the nonmoving party. See Bussey v. John Deere Co., 531 So.2d 860,863 (Ala. 1988).
Under present Alabama law, in order to succeed on a fraud or misrepresentation claim, a plaintiff must establish: (1) a false representation by the defendant concerning an existing material fact; (2) a representation that (a) the defendant knew was false when it was made, (b) was made recklessly and without regard to its truth or falsity, or (c) was made by telling the plaintiff that the defendant had knowledge that the representation was true, when the defendant did not have such knowledge; (3) reliance by the plaintiff on the representation; (4) that the plaintiff's reliance was reasonable under the circumstances; and (5) damage proximately resulting from the plaintiff's reliance. See Ex parteGovernment Employees Ins. Co., 729 So.2d 299, 304 (Ala. 1999). A plantiff who alleges "promissory fraud" must also show that the defendant had no intention of performing as promised and that the defendant made the promise with an intent to deceive. See Exparte Lumpkin, 702 So.2d 462, 466 (Ala. 1997). Because this case was filed before this Court decided Foremost Insurance Co. v.Parham, 693 So.2d 409 (Ala. 1997), adopting the "reasonable reliance" standard, Rowan was required only to prove that his reliance was "justifiable." This Court explained the element of "justifiable reliance" as follows:
 "A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully understand the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is one so patently and obviously falsethat he must have closed his eyes to avoid the discovery of the truth."
Hurst v. Nichols Research Corp., 621 So.2d 964, 968-69 (Ala. 1993) (internal quotations omitted).
The undisputed evidence in this case is that Rowan was 31 years old when he signed the employment contract. He had the benefit of over 20 years of education, including 4 years of medical school. Rowan had also completed a five-year residency program at the University of South Alabama. The plain and unambiguous language of the employment contract states that Rowan would receive a bonus only if he renewed his employment with Bailey for a second year and was still "employed by [Bailey] at [Bailey's] corporate year end following the first anniversary of [the] agreement." The plain and unambiguous *Page 508 
language of the employment contract also states that the contract could be modified only by a writing signed by both Bailey and Rowan. "Other than by closing his eyes to avoid discovering the truth, [Rowan] could not have failed to realize" that the contract terms regarding the bonus could not be modified without a signed writing. Hurst, 621 So.2d at 969. Accordingly, Rowan did not justifiably rely on any representation he says Bailey made with respect to the bonus.[2] See id.
 III.
The trial court erred by denying Bailey's motion for a judgment as a matter of law on Rowan's fraud claim. Accordingly, we reverse the trial court's judgment and remand the case for that court to enter a judgment in favor of Bailey on those claims.
REVERSED AND REMANDED.
MADDOX, HOUSTON, LYONS, and BROWN, JJ., concur.
[1] This case was filed before this Court decided ForemostInsurance Co. v. Parham, 693 So.2d 409 (Ala. 1997), wherein it adopted the "reasonable reliance" standard for testing fraud claims.
[2] We note Bailey's additional assertion that the trial court erred by denying his motion for a new trial, and Rowan's cross-appeal arguing that the trial court committed reversible error by reducing the jury's award of punitive damages. Our conclusion, however, makes discussion of these issues unnecessary.