PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CIVIL APPEALS.
Clyde Ledford, Martha Ledford, Fred Ledford, and Brenda Ledford sued H. Charles Engle, Alice S. Shelley, and Nell T. Koenig, alleging fraud, conversion, and the tort of outrage and seeking to rescind a mortgage held by Shelley and Koenig. They filed their action in the Circuit Court of Shelby County. The circuit court entered a summary judgment for the defendants on all claims.[1] The plaintiffs appealed *Page 992 
to this Court; this Court transferred the case to the Court of Civil Appeals, and that court, on March 12, 1999, affirmed, without an opinion. Ledford v. Engle, (No. 2971041) ___ So.2d ___ (Ala.Civ.App. 1999) (table). We granted the plaintiffs' petition for certiorari review. We affirm in part, reverse in part, and remand with instructions for further proceedings.
Fred Ledford and his wife Brenda Ledford owned a 46-acre tract of land in Chilton County, as well as a home on one acre of land in Shelby County. Fred Ledford had been trying to sell the Chilton County property and had listed it for sale with First Real Estate, a real-estate agency. In 1989, Fred Ledford met Engle and hired him as a financial adviser. After he had hired Engle, Fred discontinued his arrangement with First Real Estate, and, instead, allowed Engle to assist him in finding a buyer and selling the Chilton County property.
Engle was not licensed as a real-estate broker. However, he did find buyers for the Ledford property; those buyers were Shelley and Koenig, who are also Engle's sister and a business associate. Shelley and Koenig purchased the Chilton County property from the Ledfords for $55,000, substantially less than the price at which Fred Ledford had listed the property for sale. Shelley and Koenig also lent the Ledfords $53,200, in return for a mortgage on the one-acre parcel of real estate (with a house on it) in Shelby County owned by the Ledfords and on property owned by Fred Ledford's parents (Clyde M. Ledford and Martha Ledford) that surrounded this acre. Engle promised the plaintiffs during the negotiations for the Shelby County property that he would build an apartment complex on that property. The mortgage was executed by all of the owners of the two parcels of the Shelby County property. The transactions (the purchase of the Chilton County land and the loan/mortgage related to the Shelby County land) were closed simultaneously and were intertwined. In addition, the closing contracts specified precisely that the proceeds from both the sale and the loan would be used to pay off numerous debts of the Ledfords. Also included in each contract was a provision for a lump-sum payment to Engle for advances, services rendered, surveys, title policies, fees, appraisals, and expenses. The eventual result was that all of the Ledfords' debts to various entities were paid from proceeds of the sale of the Chilton County property and the loan secured by the mortgage on the Shelby County property.
On appeal, the plaintiffs seek to have the mortgage relating to the Shelby County land rescinded because, they say, it was procured by fraud. In addition, they seek to recover moneys paid to Engle as fees charged for the real-estate services he performed, because, they say, he performed those services without a real-estate broker's license, in violation of Ala. Code 1975, §34-27-30.
The plaintiffs' appeal raised two questions: (1) Was there substantial evidence before the trial court of fraud committed by the defendants during the transactions relating to the Shelby County land and the Chilton County land, and (2) does Engle's lack of a real-estate broker's license prevent him from charging and collecting fees for the services he performed?
In reviewing a summary judgment, an appellate court "utilize[s] the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988). "`Summary judgment [for a defendant] is proper when there is no genuine issue of material fact as to any element of a cause of action, and the defendant is entitled to a judgment as a matter of law. If there is [substantial] evidence . . . of every element of a cause of action, summary judgment is inappropriate.'" *Page 993 Ex parte General Motors Corp., [Ms. 1971318, Sept. 24, 1999] ___ So.2d ___, ___ (Ala. 1999), quoting Berner v. Caldwell,543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially); see also Calvert v. Casualty Reciprocal Exchange Insurance Co.,523 So.2d 361 (Ala. 1988); Nettles v. Henderson,510 So.2d 212 (Ala. 1987); Wilson v. Brown,496 So.2d 756 (Ala. 1986).
 I. Was There Substantial Evidence of Fraud?
The plaintiffs made two fraud claims — one alleging a fraudulent misrepresentation and one alleging promissory fraud.
In order to succeed on their fraudulent-misrepresentation claim, the plaintiffs must prove: (1) that the defendants made a false representation concerning an existing material fact; (2) that the defendants either knew the representation to be false, made it recklessly, or made it with no knowledge of whether it was true; (3) that the plaintiffs "justifiably relied" on the representation;[2] and (4) that the plaintiffs incurred damage as a proximate result of their reliance on the representation. Exparte Household Retail Services, Inc., 744 So.2d 871, 877 (Ala. 1999), citing Cato v. Lowder Realty Co., 630 So.2d 378, 381
(Ala. 1993).
It is undisputed that neither Shelley nor Koenig misrepresented any facts to the plaintiffs themselves, but the plaintiffs claim that Engle was acting as their agent and that his acting as a real-estate agent when he in fact held no license was a misrepresentation for which they are liable. The plaintiffs also contend that Engle made a misrepresentation to them when he promised to build an apartment complex on the Shelby County land. Therefore, we focus on the evidence relating to the actions of Engle to determine if the factfinder could find, on the basis of substantial evidence, that he in fact made a misrepresentation of material fact. Fred Ledford stated in deposition testimony that the only misrepresentations Engle made were representations to the effect that he would find a suitable buyer for the Chilton County land and that he was going to build an apartment complex on the Shelby County property. It is clear from the record that Engle did find buyers for the Chilton County land — Shelley and Koenig. While it might be unusual for buyers to be so closely tied to an agent through whom they are buying real estate, the plaintiffs made no complaints when Engle found these buyers. The plaintiffs were not forced into the sale and the loan transactions, but entered them voluntarily. Consequently, it is clear that Engle did find buyers that the plaintiffs agreed were suitable.
The second alleged misrepresentation involves a claim by the plaintiffs that Engle told them he was going to build an apartment complex on the two parcels of Shelby County property, which were owned by the Ledfords and Fred's parents. There was no written contract calling for Engle to build apartments on that land, nor was there any timetable as to when the project would begin. Essentially, the plaintiffs are basing this fraud claim on a promise they say Engle made to them; consequently, this claim is a claim of promissory fraud. See Ex parte City of Gadsden,718 So.2d 716, 721 (Ala. 1998); Cabinetware, Inc. v. Birmingham SawWorks, Inc., 614 So.2d 1034 (Ala. 1993). A "promissory-fraud" claim requires a plaintiff to prove that "the defendant had no intention of performing as promised and that the defendant made the promise with an intent to deceive." Bailey v. Rowan, 751 So.2d 504,507 (Ala. 1999); Ex parte Lumpkin, 702 So.2d 462, 466 (Ala. 1997). The record contains no evidence indicating *Page 994 
that Engle had any intent to deceive the plaintiffs. Therefore, they failed to present evidence of one of the essential elements of their promissory-fraud claim. The summary judgment was proper as to both fraud claims.[3] The judgment of the Court of Civil Appeals is affirmed as to those claims.
 II. Was Engle Entitled To Compensation For Services He Performed?
The second issue is whether the fact that Engle was not a licensed real-estate broker prevents him from charging and collecting fees from Fred and Brenda Ledford in connection with the sale of their Chilton County land and the loan/mortgage relating to the Shelby County land.
The documents related to both the sale of the Chilton County property and the mortgage of the Shelby County property included an agreement between the plaintiffs and Engle that provided that a large portion of the proceeds of the sale and the loan would be paid to Engle as fees for his services.
Initially, we must determine whether the applicable statute of limitations has run on the plaintiffs' claim that these agreements, which provided for fees to be paid to Engle, are void. An action arising out of a contract under seal must be brought within 10 years of the signing of the contract. Ala. Code 1975, §6-2-33. Both the contract for the sale of the Chilton County property and the mortgage on the Shelby County property were contracts under seal. Both were signed in February 1990, and the complaint in this case was filed on February 14, 1997, well within the 10-year period. Consequently, there is no statute-of-limitations problem as to this issue.
The requirement that one acting as an agent arranging for the sale of real estate hold a broker's license is set out in Ala. Code 1975, § 34-27-30. That statute provides:
 "It shall be unlawful for any person, partnership, corporation, or branch office, for a fee, commission or other valuable consideration, or with the intention or expectation of receiving or collecting a fee, commission or other valuable consideration from another, to do any of the following unless he is licensed under Articles 1 and 2 of this chapter:
"(1) Sell, exchange, purchase, rent, or lease real estate;
 "(2) Offer to sell, exchange, purchase, rent, or lease real estate;
 "(3) Negotiate or attempt to negotiate the listing, sale, exchange, purchase, rental, or leasing of real estate;
 "(4) List or offer or attempt or agree to list real estate for sale, rental, lease, exchange, or trade;
". . . .
 "(7) Aid, attempt, or offer to aid in locating or obtaining for purchase, rent, or lease any real estate;
 "(8) Procure or assist in procuring of prospects for the purpose of effecting the sale, exchange, lease, or rental of real estate;
 "(9) Procure or assist in the procuring of properties for the purpose of effecting the sale, exchange, lease or rental of real estate; or
 "(10) Present himself or be presented as being able to perform an act for which a license is required."
If a person acts in violation of this statute, then any agreement to compensate that person for services mentioned in the statute is void and unenforceable. Liles v. Flatley, 643 So.2d 947, 948
(Ala. 1994). See *Page 995 
also Culverhouse v. Culverhouse, 420 So.2d 33, 37 (Ala. 1982);Dillard v. Pan-American Invs., Inc., 347 So.2d 990, 991
(Ala. 1977).
In order for the agreements providing for the payment of fees to Engle to be void and unenforceable, Engle must have been performing services as a real-estate broker. Engle clearly performed a number of the actions listed in § 34-27-30. He found persons willing to purchase Fred and Brenda Ledford's Chilton County land and helped to negotiate the contract for the sale of that land. A real-estate broker is one who brings together those selling real estate and those buying it and in some way assists in the negotiation of the sale-purchase transaction. Dillard, 347 So.2d at 991. It is undisputed that Engle both introduced the sellers to Shelley and Koenig and assisted in the negotiations of the contracts. Therefore, the record contains substantial evidence indicating that Engle was acting as a real-estate broker. It is irrelevant whether he told the plaintiffs that he did, or that he did not, have a license; it matters only whether he did the things a real-estate broker would have done. Because Engle was at no time licensed as a real-estate broker, it was for the trier of facts to determine if Engle violated § 34-27-30, and, thus, whether the agreements to compensate him for any of the services mentioned in the statute would be void and unenforceable.
Engle received a total of $35,700 from the Ledfords — the sum of $21,000 from the proceeds of the sale of the Chilton County land and the sum of $14,700 from the proceeds of the loan secured by the mortgage for "advances, services rendered, surveys, title policy, fees, appraisal, and expenses." All of these fees were provided for in agreements included within the sales contract and the mortgage. The summary judgment for the defendants on this claim was improper. The judgment of the Court of Civil Appeals is reversed insofar as it affirmed the summary judgment on the claim relating to the validity of the agreements to compensate Engle, and the case is remanded with instructions to direct the trial court to determine what portion, if any, of the $35,700 constituted fees or other payment for those services mentioned in § 34-27-30, services for which Engle could not legally charge.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
[1] The plaintiffs make no argument on appeal regarding the summary judgment as to the conversion and the tort-of-outrage claims.
[2] This action was filed before March 14, 1997; on that date this Court decided Foremost Insurance Co. v. Parham,693 So.2d 409 (Ala. 1997), which changed the rule that a plaintiff alleging fraudulent misrepresentation must prove "justifiable reliance" upon the representation, to a rule requiring that the plaintiff prove "reasonable reliance."
[3] The defendants claim that this action was barred by the two-year statute of limitations for fraud actions, § 6-2-38, Ala. Code 1975. Because we conclude that the plaintiffs presented no substantial evidence of a fraudulent misrepresentation, we do not discuss the issue whether the fraud claims were barred by the statute of limitations or the related issue of when the plaintiffs learned of the alleged fraud.