Leonard L. Finz, J.
The plaintiff entered into a contract with the defendant to provide all necessary labor and materials to create three additional rooms in the. basement of the subject premises at an agreed price of $2,900. The plaintiff paid the sum of $2,600, $1,700 of which was paid out to others for the cost of materials used and for outside electrical work contracted. The remaining $900, claims the defendant, represented the cost of the defendant’s labor, (a self-employed carpenter) at the rate of $150 per week for a total of six weeks. The plaintiff in this action now seeks the return of the full sum of $2,600 paid to the defendant.
The plaintiff’s theory of recovery is addressed solely to the undisputed fact that the defendant was “unlicensed,” and, as such, and in accordance with the Administrative Code of the City of New York, was guilty of a misdemeanor. It must be underscored that the plaintiff “ is not suing the defendant for what it cost her to re-do the work, which would be an item of damages in a breach of contract action ’ ’. Consistent with the plaintiff’s theory in the prosecution of her action, and despite the inquiries by the court, there was no testimony in this regard whatsoever.
The applicable sections of the Administrative Code of the City of New York which are to be found under article 42 of chapter 32 with respect to “home improvement” contracts, read as follows:
Section B32-350.0 declaring the legislative purpose and intent states: “It is the purpose of the city council in enacting this article to safeguard and protect the home owner against abuses and fraudulent practices by licensing persons engaged in the home improvement, remodeling and repair business.”
Section B32-351.0 entitled “Definitions” and more particularly subdivision 2 defines “Home improvement” as meaning : ‘‘ the construction, repair, replacement, remodeling, alteration, conversion, rehabilitation, renovation, modernization, improvement, or addition to any land or building, or that por *98 tion thereof which is used or designed to he used as a residence or dwelling place and shall include but not be limited to the construction, erection, replacement or improvement of * * * basements
Subdivision 4 defines “ Owner ” as: “ any homeowner, condominium unit owner, tenant, or any other persons who orders, contracts for or purchases the home improvement services of a contractor or the person entitled to the performance of the work of a contractor pursuant to home improvement contract.”
Subdivision 6 defines 1 ‘ Home improvement contract ’ ’ as meaning: “ an agreement, whether, oral or written, or contained in one or more documents, between a * * * contractor and a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, provided said work is to be performed in, to or upon the residence or dwelling unit of such tenant, for the performance of a home improvement and includes all labor, services and materials to be furnished and performed thereunder.”
Section B32-352.0 provides: “No person shall solicit, canvass, sell, perform or obtain a home improvement contract as a contractor or salesman from an owner without a license therefor.”
Section B32-358.0 is entitled “Prohibited acts” and subdivision 6 thereof provides: “The following acts are prohibited: * * * 6. Wilful or deliberate disregard and violations of the building, sanitary, fire and health laws of this city.”
Section B32-365.0 is entitled “Violations and penalties.” Subdivision 1 thereof provides: ‘1 Any person who shall own, conduct or operate a home improvement business without a license therefor or who shall violate any of the provisions of this article * * * shall be guilty of a misdemeanor, and upon conviction, shall be punishable by imprisonment for not more than six months, or by a fine of not more than one thousand dollars, or both such fine and imprisonment, and each such violation shall be deemed a separate offense.”
It is conceded that the defendant was prosecuted in the Criminal Court for violation of the Administrative Code and was fined the sum of $500, or 30 days in jail, upon his plea of guilty to having violated, section B32-352.0 and subdivision 6 of section B32-358.0 of the code.
The interesting and challenging question that now emerges is whether the defendant who contracted to provide labor, services and materials under a home improvement contract, is *99 obliged to return all moneys received, on the sole ground that the defendant did not have a license to do home improvement work.
As stated by the plaintiff, “ The case at Bar is apparently one of first impression with regard to the issues presented.” In this connection, the court, too, has been unable to locate any decisional law that is specifically in point.
In support of its position, the plaintiff, in essence, urges ' that since the defendant was not licensed to do the work set forth in the contract, the ‘ ‘ very entering into an agreement by the defendant was illegal.” Further, that the licensing statute is penal, and that a contract entered within its caveat is, a fortiori, void. (See Kaiser-Fraser Corp. v. Otis & Co., 195 F. 2d 838, cert. den. 344 U. S. 856; Sturm v. Truby, 245 App. Div. 357.)
In addition, the plaintiff stresses “ consumer affairs ” arguments, urging that the defendant who is admittedly in violation of the Administrative Code cannot retain the fruits of his illicit activity and must restore the funds so secured.
Further, argues the plaintiff, the defendant, has earned no right by way of quantum meruit since his criminal wrong was an assault upon the public interest and, as such, he neither can expect nor receive any favor for his illicit labors.
In contrast to the plaintiff’s contentions, the defendant, in agreeing that the contract is void, presses the argument that the law must leave the parties where it finds them. In support of this proposition, the defendant urges the application of Schank v. Schuchman (212 N. Y. 352, 359), in which case, Judge Cardozo, writing the opinion of the 'Court of Appeals, stated: ‘ ‘ The law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive; it will not for that reason aid another in taking from him that which good conscience entitles him to retain.” Similarly in Johnson v. Dahlgren (166 N. Y. 354, 360), the Court of Appeals held that it “will leave the parties as they are.”
In both the Schank (212 N. Y. 352, supra) and Johnson (166 N. Y. 354, supra) cases the thrust of the court’s decisions appear .steeped in the theory that in “good conscience” the defendant who provided services should not be required to return the moneys received, since in so doing, it would heap an unjust enrichment upon the complaining party. Indeed, present case law is .silent in those instances where the ‘1 licensing statute ” makes the performance of the contract a crime, as in the instant case. As such, the decision of this court *100 must turn upon public policy considerations molded within the framework of the interests of justice.
How then, can the public policy be protected and the interests of justice secured? The public policy is protected by enactment of the licensing sections of the Administrative Code and the severe penalties to be found thereunder. Here, the defendant clearly was guilty of the crime committed, for which he redeemed himself to the public by way of the penalty he suffered. If the public feels the urgency and need for greater punishment, it can urge it by legislative enactment, in enlarging the punitive sanctions of the code. Certainly criminal punishment is a sufficient deterrent in the public’s battle against unscrupulous business practices or the callous disregard of the law. In construing the law as set forth in the Administrative Code ‘£ it is to be presumed * * * that the legislature intended to enact only that which is reasonable ” without applying a construction that would result in unfairness and undue hardship. (Matter of Dell, 56 Misc 2d 1017; 56 N. Y. Jur., Statutes, § 211, pp. 669-672.) For to direct the defendant to return the moneys he received would be tantamount to civil punishment in addition to criminal penalties, and as such, inconsistent with the traditional spirit of fair play in which every person has a vested interest, be he plaintiff or defendant.
The plaintiff, despite other urgings, has elected to proceed upon the singular basis that the “unlicensed” status of the defendant is, in and of itself, sufficient to warrant a full return of all sums paid, irregardless of the actual benefits received from the defendant’s labors. The court rejects this argument, and is not troubled by the consequences of its decision. For, notwithstanding the denial of the plaintiff’s contentions, the plaintiff is not without full remedy at law. All she need do is to provide a sufficient basis for damages by showing that the work actually performed by the defendant was defective or unworkmanlike, thereby requiring the further services o'f another contractor. By this procedure, the Administrative Code would indeed protect society, as it should, and the basic law of damages would indeed protect the plaintiff, as it always has.
Accordingly, the complaint is dismissed, without costs and without prejudice to the institution of an action based upon a breach of contract, if the plaintiff be so advised,