*925 OPINION OF THE COURT
Harold Baer, Jr., J.
Plaintiffs Electrovoice International, Inc. and Embassy Electronics Ltd. sue to recover from defendants certain sums paid for adjusting services performed after a burglary loss.
In May 1984, plaintiffs suffered a burglary loss at premises leased by them. Third-party defendant Laurence Klausner, Inc., an insurance broker, referred defendant Sarasohn Adjusting Co. to the plaintiffs. Defendant Arthur J. Pestcoe, an employee of Sarasohn Adjusting, met with the principals of plaintiffs and entered into retainer agreements with plaintiffs on behalf of Sarasohn Adjusting. The role of Sarasohn Adjusting was to be that of a public adjuster.*
In 1985 and 1986, the plaintiffs’ claims were adjusted. Electrovoice was paid $225,000 and Embassy received $285,000. Sarasohn Adjusting received a fee of $18,000 and $22,800 based upon these payments.
Despite having recouped on the loss, plaintiffs began this lawsuit. The amended complaint contains allegations of fraud and conspiracy by defendants. At the heart of the case is plaintiffs’ assertion that defendants were not licensed to perform adjusting work in connection with a loss due to burglary in 1984-1985 and thus were not in compliance with Insurance Law §2101 (g) (2). The evidence presented fails to show any fraud or conspiracy by defendants. The evidence does show, though, that Sarasohn Adjusting and Mr. Pestcoe, although licensed as public adjusters in 1984-1985, were not authorized to adjust burglary losses. The statute at that time permitted public adjusters to perform this work only for losses due to fire.
In 1984-1985, Insurance Law § 2101 (g) (2) defined a public adjuster as a person or entity that for compensation "acts or aids in any manner on behalf of an insured in negotiating for, or effecting, the settlement of a claim or claims for loss or damage caused by, or resulting from, fire”. The Legislature amended section 2101 effective January 1, 1986 to expand the scope of work permissible for a public adjuster from losses due to fire to numerous other categories of loss, including loss due *926 to burglary. Had this amendment been in effect in 1984-1985, plaintiffs admittedly would have no case.
Defendants contend that the amendment should be applied retroactively. I do not concur. There is nothing in this amendment to suggest that it was intended to be retroactive. Defendants argue that the amendment should be considered remedial or curative in nature and therefore retroactive. The amendment, though, is not curative since it does not "pertain to past events exclusively” and is not "designed to remedy specific defects in proceedings already prosecuted”. (McKinney’s Cons Laws of NY, Book 1, Statutes § 54 [b].) The amendment may be remedial but retroactivity does not follow in the case of a statute, such as this one, "whereby a new right is established even though it be remedial.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 54 [a].) This does not, however, dispose of the case.
Many authorities hold that unlicensed persons may not sue for breach of contract or seek a recovery based on quantum meruit even though their services were completely and satisfactorily performed. Statutes that require, for instance, that home improvement contractors have licenses are intended to protect the public against the financial and even physical dangers that unscrupulous or incompetent contractors represent. (See, Chosen Constr. Corp. v Syz, 138 AD2d 284 [1st Dept 1988]; Millington v Rapoport, 98 AD2d 765 [2d Dept 1983].) Two cases decided prior to the 1986 amendment held that public adjusters were barred from recovery for services performed with respect to burglary losses. (Gross v Reliance Ins. Co., 119 Misc 2d 270 [Sup Ct 1983]; Zarrell v Gutenplan Assocs., 111 Misc 2d 340 [Sup Ct 1981]; see also, Abrams Adjusters v Lewis, NYLJ, June 17, 1980, at 10, col 6 [Sup Ct, Alexander, J.].)
In the case before me, as in Gross (supra) and Zarrell (supra), the situation is slightly different from the facts in many licensing cases. Here, defendants had the most comprehensive licenses available to public adjusters; the problem is that no public adjuster was allowed to be licensed to adjust burglary losses. (See, Insurance Law § 2102 [a] [1]; [b] [2].) The licensing problem here thus shifts to a second level. A licensed public adjuster who sought to adjust a burglary loss in 1984-1985 would, under various authorities, have been engaged in the unauthorized practice of law. (Gross v Reliance Ins. Co., supra; Professional Adjusters v Tandon, 433 NE2d 779 [Sup *927 Ct, Ind 1982]; Rhode Is. Bar Assn. v Lesser, 68 RI 14, 26 A2d 6 [1942].)
The agreements in question here were unenforceable under Gross (supra) and Zarrell (supra) and had defendants sought to rely upon the agreements to obtain a fee that plaintiff had declined to pay, the defendants’ effort would have come to naught. This does not necessarily mean, however, that plaintiffs must triumph. In contrast with Gross and Zarrell, the services here were completely performed and performed satisfactorily, the compensation therefor was paid and yet now, several years later, the fees that plaintiffs had paid must, they insist, be returned to them. In Schank v Schuchman (212 NY 352, 359 [1914]), Judge Cardozo wrote: "If the defendant were suing the plaintiffs for the price, and the court were to deny him relief, its refusal would not rest upon the ground that it would be against good conscience for him to have the money. The basis of its refusal would rather be that because of his illegal acts the law would leave him where it found him. * * * In this case it finds him in a situation altogether different. He has received the money, and the plaintiffs are trying to take it away from him. The law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive; it will not for that reason aid another in taking away from him that which good conscience entitles him to retain.” On the basis of such reasoning, it has been held that a defendant who has violated a licensing statute will not be required to return compensation paid after completion of the job even though he would have been unable to sue upon the contract. (Johnston v Dahlgren, 166 NY 354 [1901]; Food Mgt. v Blue Ribbon Beef Pack, 413 F2d 716 [8th Cir 1969]; Comet Theatre Enters. v Cartwright, 195 F2d 80 [9th Cir 1952]; Unger v Travel Arrangements, 25 AD2d 40 [1st Dept 1966]; Vogel v Lotz, 26 NJ Misc 281, 60 A2d 815 [Camden City Dist Ct 1948].)
This rule should govern here. Defendants satisfactorily performed services that contributed to plaintiffs’ receiving substantial recoveries. Defendants have been paid pursuant to agreements that plaintiffs did not challenge. To allow plaintiffs to obtain the benefit of the services and to recoup the consideration paid therefor is not equitable under all the circumstances and is not necessary to effect the legislative purpose behind the licensing statute in question. (See, Segrete v Zimmerman, 67 AD2d 999 [2d Dept 1979] [unlicensed home improvement contractor barred from recovering amounts still due but allowed to retain amount already paid]; Goldman v *928 Garofalo, 71 AD2d 650 [2d Dept 1979], affd 50 NY2d 851 [1980] [unlicensed medical lab]; Host v Gauntlett, 73 Misc 2d 96 [Civ Ct 1973].)
Certainly this is so when one considers, as is appropriate (Unger v Travel Arrangements, 25 AD2d, supra, at 44), the legislative purpose. Prior to the amendment, the law allowed independent adjusters, i.e., those working on behalf of insurers, to engage in the adjustment of losses beyond the fire category. (Insurance Law § 2101 [g] [1].) An insurance broker was also allowed to adjust such a loss under a policy he had placed, as was a broker designated in writing by the insured prior to any loss. (Insurance Law § 2101 [g] [2] [C], [D].) If these provisions suggest the possibility of a certain arbitrariness in the restraints placed on public adjusters, the legislative history bears that out. The limitation was not the result of careful legislative reflection and decision, but of the fact that originally the insurance industry had provided consumers with coverage only against fire losses; the statute simply had not kept pace with the later explosive growth in available coverage. (NY Assembly mem in support of amendment to Insurance Law § 2101 [g] [2], L 1985, ch 570, § 1, 1985 NY Legis Ann, at 219-220.) The "unrealistic limitation” was removed by the Legislature "[f]or the protection of consumers in New York,” who had been precluded from obtaining the useful services of public adjusters with respect to most types of losses. (Id.) Thus, to allow plaintiffs here to recoup their payments after having received the benefits would be the infliction of a punishment on defendants out of proportion to the wrong committed by them or the requirements of public policy. (See, Rosasco Creameries v Cohen, 276 NY 274 [1937.)
The complaint is dismissed.
[Portions of opinion omitted for purposes of publication.]

 In general, an insurance adjuster examines a loss and ascertains the value thereof. Insurance companies have long employed individuals to fulfill this function on their behalf. Independent adjusters are persons who perform this role on behalf of a number of insurers. Public adjusters perform this task on behalf of insureds.