**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-1802**

———————————

SOUTHWESTERN LIFE INSURANCE GROUP,

Plaintiff,

and

JOY MOREHEAD,

Defendant - Appellant,

versus

FEWKES MANAGEMENT CORPORATION,

Defendant - Appellee,

and

ROBIN HOOD GROUP, INCORPORATED,

Third Party Defendant - Appellee.

———————————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh. Malcolm J. Howard, Senior
District Judge. (4:05-cv-00018-H)

———————————

Argued: May 22, 2007              Decided: August 16, 2007

———————————

Before TRAXLER and DUNCAN, Circuit Judges, and Frank D. WHITNEY,
United States District Judge for the Western District of North
Carolina, sitting by designation.

———————————

Affirmed by unpublished opinion. Judge Whitney wrote the opinion,
in which Judge Traxler and Judge Duncan joined.

Donald S. Higley, II, HOPF & HIGLEY, P.A., Greenville, North Carolina, for Appellant.  Gary J. Rickner, WARD & SMITH, P.A., New Bern, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

WHITNEY, District Judge:

Joy Morehead appeals from a final judgment of the district court, following a bench trial, declaring Fewkes Management Corporation as the rightful owner of the proceeds of her late husband's life insurance policy and denying her claim of unfair and deceptive trade practices against Robin Hood Group. We review the district court's findings of fact for clear error and its conclusions of law de novo. Williams v. Sandman, 187 F.3d 379, 381 (4th Cir. 1999). Finding no error, we affirm.

I.

Joy Morehead's late husband, Ralph Morehead, was a participant in a group life insurance plan that provided him $100,000 in life insurance benefits. Initially, Mrs. Morehead was designated as the beneficiary of the life insurance benefits payable under the policy.

Sometime in or around 1998, Mr. Morehead was diagnosed with a potentially terminal illness, severe chronic obstructive pulmonary disease. On the advice of their insurance agent, the Moreheads converted the policy to an individual policy of insurance so that it could be sold immediately for cash through a regulated process that is known as viatication. The monthly premium under this individual policy was $352.58, which apparently exceeded the Moreheads' ability to pay. Rather than allow the policy to lapse,

3

the Moreheads, through the Medical Escrow Society, a Florida-based viatical broker, solicited bids to sell the policy for cash to viatical investors. Robin Hood Group, an Illinois-based viatical settlement provider that represents a group of such investors, made the Moreheads an offer of $21,000 for the sale of the policy. The offer by Robin Hood was the highest offer made by any viatical company for the sale of the policy.

On or about October 25, 2005, Ralph Morehead, Joy Morehead, and Robin Hood executed a Viatical/Life Settlement Agreement whereby the Moreheads agreed, in exchange for a lump-sum payment of $21,000, to assign their interest in the policy to a trustee for the benefit of new beneficiaries named on the policy. The trustee appointed to take ownership of the policy was Fewkes Management Corporation. The new beneficiaries were seven individual investors who invested varying amounts to fund the settlement agreement, pay the premiums on the policy as long as Mr. Morehead lived, and who, at Mr. Morehead's death, were to receive the entire proceeds of the policy ($100,000) pro rata to their investment.

At all times relevant to the viatical settlement transaction, neither Robin Hood nor Fewkes Management were licensed to conduct business in North Carolina as viatical settlement providers pursuant to N.C. Gen. Stat. § 58-58-210(a) (2002), although Kristan Fewkes (Vice-President of Robin Hood Group) was personally licensed in North Carolina as a viatical settlement broker and erroneously

4

believed that this was the only license required. Also, Robin Hood failed to provide Mr. Morehead with a brochure describing the process of viatical settlements as required by N.C. Gen. Stat. § 58-58-245(a)(8), and failed to use contracts in execution of the viatical settlement that had been approved by the Commissioner of Insurance, as required by N.C. Gen. Stat. § 58-58-220.

Despite these technical defects, the viatical settlement was fully and satisfactorily performed as contemplated by all parties. Neither of the Moreheads complained about the terms of the transaction prior to the institution of this litigation by the insurer, Southwestern Life Insurance Group, which filed this declaratory judgment action seeking a judicial determination of whether Fewkes or Mrs. Morehead was the proper owner of the policy proceeds, in light of the fact that Fewkes was not licensed to engage in viatical settlements within North Carolina at the time of the Morehead transaction.

II.

This appeal presents the question of whether, under North Carolina law, a party to a fully executed contract may rescind it on the basis of the other contracting party's failure to comply with licensing and similar regulatory statutes, which statutes do not expressly create such a private right of action. North Carolina case law clearly and directly answers the posited question

5

in the negative. <u>Hawkins v. Holland</u>, 388 S.E.2d 221, 223 (N.C. Ct. App. 1990) (citing Annotation, Recovery Back of Money Paid to Unlicensed Person Required by Law to Have Occupational or Business License or Permit to Make Contract, 74 A.L.R.3d 637 (1976)).

Morehead mistakenly relies on a line of North Carolina decisions standing for the proposition that "unlicensed persons who contract to provide services for which a license is required may not recover on the contract." <u>Marker & Assoc., Inc. v. J. Allan Hall & Assoc.</u>, 314 F. Supp. 2d 555, 561 (E.D.N.C. 2004); <u>see also</u> <u>Hanover Realty v. Flickinger</u>, 362 S.E.2d 173 (N.C. Ct. App. 1987); <u>Gower v. Strout Realty, Inc.</u>, 289 S.E.2d 880 (N.C. Ct. App. 1982). Those cases are inapposite here, however, because Appellees are not attempting to recover moneys still owing to them under the tainted agreement. Rather, Morehead is trying to recover *back* the consideration she and her late husband voluntarily parted with as part of their performance under the Viatical Settlement Agreement, after receiving the full benefit of their bargain.

The analysis contained in <u>Hawkins</u> squarely disposes of Morehead's arguments in favor of an equitable remedy in these circumstances. Here, as in <u>Hawkins</u>, the relevant regulatory enactment provides for ample penalties and enforcement mechanisms, not one of which is a private right of action for annulment and

6

avoidance of a concluded transaction.[*] This counsels us against recognizing such a remedy by judicial construction. <u>Hawkins</u>, 388 S.E.2d at 223. Furthermore, to undo the life insurance assignment after full and satisfactory performance by Appellees would result in a disproportionate forfeiture by Fewkes and its investors (who paid $21,000 to the Moreheads for the assignment of the policy in addition to two years' worth of monthly premiums to Southwestern between the assignment and Mr. Morehead's death, in expectation of a $100,000 return on their investment at Mr. Morehead's death) and a corresponding windfall recovery by Morehead. Such a result would run contrary to established principles of equity. <u>Id.</u> The district court, then, properly declined to disregard the assignment of the life insurance policy pursuant to the Viatical/Life Settlement Agreement and properly awarded Fewkes ownership of the policy proceeds.

## III.

We next consider whether Morehead has a remedy under North Carolina's unfair and deceptive trade practices statutes. By

---

[*]<u>See, e.g.</u>, N.C. Gen. Stat. § 58-58-215 (providing for revocation or suspension of license for violations of the act); <u>id.</u> § 58-58-250(j) (providing for avoidance of a concluded viatical transaction *only* where consideration has not been timely tendered to the viator); <u>id.</u> § 58-58-265(a) (providing criminal penalties for fraud); <u>id.</u> § 58-58-290 (providing for civil remedies generally, including: prohibitory injunctions, money damages, and miscellaneous civil penalties).

7

enacting N.C. Gen. Stat. § 58-58-295, the North Carolina General Assembly has declared that "[a] violation of [the Viatical Settlements Act] is an unfair trade practice," which in turn gives rise to a private right of action under N.C. Gen. Stat. § 75-1.1 *et seq.* entitling a successful plaintiff to certain statutory remedies such as treble damages and, potentially, attorney's fees.

Robin Hood conceded throughout the proceeding below that it was not properly licensed at the time of the viatical transaction and that this defect constituted a violation of the Viatical Settlement Act. However, the district court properly rejected Morehead's unfair trade practices claim because she was unable to prove any actual damages resulting from the violation. To the contrary, the evidence and the findings of the district court demonstrate that, had the Moreheads not sold the policy to the Robin Hood investors, the policy would have lapsed (in which case she would have received northing) or would have been sold to another group of viatical investors (in which case the Moreheads would have settled for something less than the $21,000 they received from Robin Hood, since Robin Hood submitted the highest bid in response to their solicitation). Because Morehead cannot show actual injury resulting from Robin Hood's statutory infractions, the district court properly granted judgment in favor of Robin Hood.

IV.

In sum, we conclude that appellees' technical violations of North Carolina's Viatical Settlement Act neither entitle Morehead to unwind the viatical transaction after it has been fully executed and satisfactorily performed, nor give rise to a claim at law where she can prove no actual injury.   Accordingly, we affirm the judgment of the district court.

<u>AFFIRMED</u>