994 So.2d 912 (2008)
Brian FAUSNIGHT
v.
Ronald G. PERKINS and Naomi Perkins.
1060171.
Supreme Court of Alabama.
May 23, 2008.
*913 Chip Cleveland of Cleveland & Colley, P.C., Prattville, for appellant.
G. Houston Howard II of Howard, Dunn, Howard & Howard, Wetumpka, for appellees.
MURDOCK, Justice.
Brian Fausnight[1] appeals from a partial summary judgment entered by the Elmore Circuit Court in favor of Ronald G. Perkins and Naomi Perkins. We reverse.

I. Facts and Procedural History
In 2004, the Perkinses contacted Fausnight about constructing a log house for them on property they owned. After they reached an agreement on building the house, Fausnight purchased a building permit from the Town of Eclectic and began work on the house. Fausnight was not licensed to build houses, as required by Ala.Code 1975, § 34-14A-5. The Perkinses paid Fausnight $195,359.83 for the construction of the house.
After Fausnight completed the house, certain repairs were needed. Although Fausnight intended to make the repairs, before he could do so the Perkinses sued him.
In their complaint, filed on January 5, 2006, the Perkinses asserted six counts against Fausnight: (1) fraudulent suppression of the fact that Fausnight was not a licensed home builder; (2) breach of contract; (3) negligence; (4) wantonness; (5) breach of contract by failing to complete construction of the house by October 1, 2004; and (6) promissory fraud. In an amendment to their complaint, the Perkinses added a seventh count for a refund of their payments to Fausnight on the basis that, because Fausnight was not a licensed home builder, he was not entitled *914 to keep any payments made to him for the construction of the Perkinses' house. In his answer to the complaint and to the amended complaint, Fausnight denied the material allegations of the Perkinses' complaint.
On June 9, 2006, the Perkinses moved for a summary judgment on count 1 (fraudulent suppression) and count 7 (refund of payments) of their complaint, as amended. They argued that, because Fausnight was not licensed to build houses, they were entitled to a return of the $195,359.83 they had paid Fausnight under the contract.
On August 16, 2006, Fausnight filed a response to the Perkinses' summary-judgment motion. As to the claim for restitution, he conceded that, because he was not licensed to build houses, he could not bring an action to enforce his contract with the Perkinses. However, he pointed out, he was not bringing such an action but was merely defending against an action brought by the Perkinses. The Perkinses' request for the return of funds paid, he argued, was "contrary to the law."
On September 8, 2006, the trial court granted the Perkinses' motion and entered a partial summary judgment in their favor on the restitution claim.[2] In its order granting the motion, the trial court stated, in pertinent part:
"This case came before the court for a hearing on August 21, 2006, on the plaintiff's Motion for Partial Summary Judgment under counts I (fraud) and court VII (refund of payments)....
"The sole issue before the court is ... a legal one: whether [Fausnight's] failure to obtain a homebuilder's license, as required by law, entitles the plaintiffs to a refund of their payments. [Fausnight] concede[s] that the parties' contract `would be void and unenforceable assuming the defendants were attempting to enforce the same.' ...
"Thus, if [Fausnight] had completed construction of the home, and the plaintiffs had paid them nothing for it, then [Fausnight] would have absolutely no recourse against the plaintiffs, even though the plaintiffs would have obtained the benefit of all [Fausnight's] work. Ala.Code § 34-14A-14 ('A residential homebuilder, who does not have the license required, may not bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into in violation of this chapter.').
"Now that [Fausnight has] been paid, may [he] retain money that [he] had no legal right to collect from the plaintiffs? After considering the Alabama cases under similar statutes, the court finds that [he] may not. For instance in Thomas Learning Center, Inc. v. McGuirk, 766 So.2d 161, 174 (Ala.Civ.App.1998), the court quoted a New Mexico case, holding, `as a matter of public policy, an unlicensed contractor may not retain payments made pursuant to a contract which requires him to perform in violation of the [general contractor licensing] Act.' (quoting Mascarenas v. Jaramillo, 111 N.M. 410, 806 P.2d 59 (1991)). That is the exact issue in this case; whether the unlicensed defendant[] may retain the plaintiffs' payments.
"Similarly, in Ex parte Ledford, 761 So.2d 990 (Ala.2000), the court held that *915 the plaintiff was entitled to a refund of real [estate] commissions that he had paid an unlicensed broker, fees that it held the unlicensed agent `could not legally charge.' 761 So.2d at 995. Alabama cases on unlicensed lenders have reached similar results. See Edwards v. Alabama Farm Bureau Mut. Cas. Ins. Co., 509 So.2d 232 (Ala.Civ.App.1986) ('Edwards is entitled to a refund of his payments to Farm Bureau.'); Johnson v. Alabama Power Co., 664 So.2d 877 (Ala.1995) (recognizing common law right to recover payments made to unlicensed lender).
"[Fausnight has] argued that this result is [an] extremely harsh result. Although this result may appear harsh, it nevertheless flows directly from the Legislature's expressed intent to protect the public from `unqualified, incompetent or dishonest home building contractors and remodelers.' Hooks v. Pickens, [940 So.2d 1029] (Ala.Civ.App.2006) (quoting Ala.Code § 34-14A-1). The court also notes that `harsh results sometimes flow from the construction of a penal statute.' White v. Miller, 718 So.2d 88, 90 (Ala.[Civ.App.]1998).
"Since [Fausnight's] contract is void, and due to the penal nature of the statute, the court finds that the plaintiffs are entitled to a refund of their payments."
The trial court made its partial summary judgment on the Perkinses' restitution claim final pursuant to Rule 54(b), Ala. R. Civ. P. Fausnight appeals. The sole issue for consideration in this appeal is whether the trial court correctly entered a summary judgment in the Perkinses' favor on their claim for restitution.

II. Standard of Review
The standard by which we review a summary judgment is well settled:
"This Court reviews a summary judgment de novo. Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and has demonstrated that the movant is entitled to a judgment as a matter of law. Turner, supra."
Muller v. Seeds, 919 So.2d 1174, 1176 (Ala. 2005).

III. Analysis
Fausnight contends that the trial court erred when it entered a partial summary judgment in favor of the Perkinses on their claim for restitution as to the payments they made to Fausnight in the amount of $195,359.83 for the construction of their house. Fausnight contends that, although the statutes relating to the licensing of home builders prevent an unlicensed home builder from bringing an action to enforce a contract for the construction of a house, those statutes do not provide a homeowner with a right to sue to obtain a refund of payments already made to the unlicensed home builder.[3] We agree.
*916 The licensing statute at issue here is contained in Chapter 14A of Title 34, Ala. Code 1975, which is entitled "Home Building and Home Improvement Industries." Among other things, this chapter deals with the licensing of individuals and companies engaged in the profession of residential home construction. Legislative findings supporting the implementation of the chapter are found at § 34-14A-1:
"In the interest of the public health, safety, welfare, and consumer protection and to regulate the home building and private dwelling construction industry, the purpose of this chapter, and the intent of the Legislature in passing it, is to provide for the licensure of those persons who engage in home building and private dwelling construction, including remodeling, and to provide home building standards in the State of Alabama. The Legislature recognizes that the home building and home improvement construction industries are significant industries. Home builders may pose significant harm to the public when unqualified, incompetent, or dishonest home building contractors and remodelers provide inadequate, unsafe or inferior building services. The Legislature finds it necessary to regulate the residential home building and remodeling construction industries."
Section 34-14A-5 requires "residential home builders" to obtain a license from the Home Builders Licensure Board, which is established pursuant to §§ 34-14A-2(3) and -3 "to regulate the home building and residential construction industry." A "residential home builder" is statutorily defined as
"[o]ne who constructs a residence or structure for sale or who, for a fixed price, commission, fee, or wage, undertakes or offers to undertake the construction or superintending of the construction, [or who manages, supervises, assists, or provides consultation to a homeowner regarding the construction or superintending of the construction,] of any residence or structure which is not over three floors in height and which does not have more than four units in an apartment complex, or the repair, improvement, or reimprovement thereof, to be used by another as a residence when the cost of the undertaking exceeds ten thousand dollars ($10,000)."
§ 34-14A-2(10) (bracketed language added in 2006, see Act No. 2006-105, Ala. Acts 2006).
Penalties for violating the requirements of Chapter 14A are set forth in § 34-14A-14, which, at the time of the events at issue, provided, in pertinent part:
"Any person who undertakes or attempts to undertake the business of residential home building without holding a current and valid residential home builders license, issued by the Home Builders Licensure Board, as required by the provisions of this chapter ... shall be deemed guilty of a Class A misdemeanor.
". . . .
"A residential home builder, who does not have the license required, may not bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into in violation of this chapter."[4]
It is undisputed that Fausnight, in building the Perkinses' house, was engaged in residential home building without the requisite *917 license. Thus, under 34-14A-14, he could not bring an action to enforce his contract with the Perkinses. That is, if the Perkinses had not paid him $195,359.83 for the construction of the house, Fausnight could not have invoked the aid of the courts to force the Perkinses to do so.
The question raised by the present appeal, however, is not whether Fausnight could bring an action to enforce his contract with the Perkinses. The question posed is whether the Perkinses, having paid Fausnight for the construction of their house, have a cause of action to force a refund of that payment solely as a result of Fausnight's failure to be licensed under the statute.
This Court has addressed, in two cases, a similar question, namely whether a party who deals with a real-estate broker can obtain a refund of payments made to the broker if the broker does not hold a license as required by law. In Homeland Insurance Co. v. Crescent Realty Co., 277 Ala. 213, 168 So.2d 243 (1964), the plaintiff real-estate broker sued to obtain a declaration that it was entitled, following the termination of its contract with the defendant building owner, to receive commission payments on certain leases of real estate that it had negotiated on behalf of the building owner. The building owner counterclaimed for the return of all the commissions it had previously paid the broker, because the broker was not licensed.[5] After concluding that the broker was not entitled to any commission payments based on the leases in question for any period following the termination of its contract with the building owner, this Court addressed the building owner's counterclaim seeking a refund of previously paid commissions to the broker as follows:
"The commissions were voluntarily paid by the [building owner] in consideration of services actually performed. The [building owner] paid these commissions over several years. It had full knowledge of the services for which it was compensating the [broker]. The dealings between the parties were open and amicable until the [building owner] elected to cancel the agreement. There was no compulsion or oppression. Whether the [broker] was or was not licensed as a real estate broker in no wise affected its right to retain commissions already earned under the agreement. No fraud can be read into these past transactions. The [building owner] was not entitled to recover these past commissions already paid under these conditions."
277 Ala. at 216-17, 168 So.2d at 246-47 (emphasis added).
More recently, in Ex parte Ledford, 761 So.2d 990 (Ala.2000), plaintiffs brought an action seeking, among other things, to recover the fees they had paid to a real-estate broker who was not licensed as required by Ala.Code 1975, § 34-27-30, one of the successor statutes to the licensing statute in place at the time Homeland was decided. See note 5, supra. After deciding that the broker had engaged in activities requiring a real-estate broker's license, the Court remanded the cause for a determination by the trial court of what amount of the fees paid to the broker were for services for which a real-estate broker's license was required. 761 So.2d at 994-95. That amount, we implied, could be recovered by the plaintiffs.
The Court in Ledford did not take cognizance of the previous decision in Homeland, *918 much less explain how its decision could be justified given that earlier decision. For all that appears in the Court's opinion in Ledford, the only question the parties disputed was whether the defendant broker had actually performed services for which a license was necessary. There was no analysis of the issue whether, if he had performed such services, he was entitled to retain the fees he had already been paid for those services. The Court simply assumed, without discussion, that he could not.
Because neither of the foregoing cases deals with the particular statute at issue in the present case, and because neither of them provides more than a modest analysis (though we are inclined to find the reasoning in Homeland to be more persuasive), we choose to examine authority from other jurisdictions.[6]
In 2 George E. Palmer, The Law of Restitution § 8.3(b) (1978), we find the following:
"When services contracted for have been performed by an unlicensed person, courts nearly always have denied restitution of payments made for such services. In the usual case there is no unjust enrichment of the unlicensed person, since he merely receives the agreed compensation for services performed. This is the reason, either expressed or implicit, in most of the cases denying restitution, although other reasons sometimes are given. The fact that an unlicensed person will not be permitted to recover compensation for his work, either on the contract or on principles of restitution, does not make his retention of a payment for such services an unjust enrichment. This is exemplified in the decisions rejecting his action to recover for uncompensated work, while at the same time denying the defendant's counterclaim seeking restitution of payments made for the work."
(Emphasis added; footnotes omitted.) Moreover, we find that an annotation from *919 the American Law Reports articulates quite well five separate reasons why a result such as that reached in Homeland is correct:
"In the absence of a statute providing for recovery, the cases generally hold that one who has paid money to an unlicensed person in consideration of the performance of a contract by such person is not entitled to recover back the money so paid on the ground that the contract was illegal because the person performing the contract did not have an occupational or business license or permit which he was by law required to have. The bases of such holdings are [(1) ] that the law requiring the license does not specifically provide for such a right to recover back money paid, [ (2) ] that the sanctions of such law are penal in nature and must be strictly construed, [(3) ] that the specification by such laws of particular penalties, such as making violation a misdemeanor and prohibiting suits for compensation for the unlicensed services, preclude the construction of the statute as embracing a loss of the right to retain compensation which has been paid, under the rule of inclusio unius est exclusio alterius, [ (4) ] that the allowance of recovery back is not necessary to effectuate the policy of the licensing statutes, and [ (5) ] the conclusion that equity and the principles of restitution do not require that the money be paid back.
"In this latter connection recovery is denied on the ground that the compensation was a voluntary payment, that any misapprehension in the payment constituted a mistake of law by which the payor is bound, and that there is no equitable reason for making restitution to a plaintiff who gets the exchange which he expected."
Maurice T. Brunner, Annotation, Recovery Back of Money Paid to Unlicensed Person Required by Law to Have Occupational or Business License or Permit to Make Contract, 74 A.L.R.3d 637, 642-44 (1976). See also Hawkins v. Holland, 97 N.C.App. 291, 294-95, 388 S.E.2d 221, 223 (1990) ("Though numerous cases involving the efforts of unlicensed building contractors to collect on their contracts have been decided by our Courts, so far as we can ascertain whether one can recover payments made on a construction contract to an unlicensed contractor has not been considered before in this jurisdiction. Other courts have considered the question, however, and held that such payments are not recoverable.... The bases of the holdings are that the statutes requiring the license do not specifically authorize the recovery of money paid ...; that such laws are penal in nature and must be strictly construed ...; that the specification of particular penalties precludes the addition of others by judicial construction ...; that allowing the recovery of such payments is not necessary to effectuate the policy of licensing statutes ...; and that equity and the principles of restitution do not require that such contractors be completely uncompensated or that contracting homeowners receive the completed construction without cost.... All these reasons persuade us that in enacting [the general-contractor licensing requirements] our legislature did not intend to authorize the recovery of amounts paid unlicensed contractors under the circumstances involved here."); Lenz v. Walsh, 362 S.C. 603, 608, 608 S.E.2d 471, 473 (S.C.Ct.App.2005) ("[G]enerally, a homeowner may not recover payments already made to an unlicensed contractor merely because the contractor did not hold a license when the contract was executed."); Mosley v. Johnson, 22 Utah 2d 348, 352-53, 453 P.2d 149, 152 (1969) ("In cases involving an action to *920 recover for work performed by an unlicensed well driller, etc., the penalty prohibiting him from recovering in the courts is severe enough, and the one for whom the work was performed may not add to that penalty by recovering back that which was voluntarily paid for the work done by such an unlicensed person.").[7]
Some courts have disagreed with the conclusion reached by the foregoing authorities, however, and have concluded that the party with whom an unlicensed entity has contracted is entitled to restitution of the payments it made to the entity. See, e.g., Ransburg v. Haase, 224 Ill. App.3d 681, 688, 586 N.E.2d 1295, 1300, 167 Ill.Dec. 23, 28 (1992) ("To allow the unlicensed architect to retain the fees paid is to allow him to practice architecture in the state of Illinois without a license and to reap the rewards thereof. The purpose of the Illinois licensing act can best be effectuated by recognizing plaintiff's right to recovery."); but see Jenkins v. Concorde Acceptance Corp., 345 Ill.App.3d 669, 674-76, 802 N.E.2d 1270, 1276-77, 280 Ill.Dec. 749, 755 (2003) (holding that if a party voluntarily pays an unlicensed entity, the voluntary-payment doctrine would preclude recovery of those funds voluntarily paid to the unlicensed entity, and distinguishing Ransburg on the basis that, in that case, "the defendant did not raise, and this court did not consider, the defense of voluntary payment"). See also, e.g., Kowalski v. Cedars of Portsmouth Condo. Ass'n, 146 N.H. 130, 132-33, 769 A.2d 344, 347 (2001) (holding that an unlicensed realestate broker must disgorge payments it received from individuals for whom it performed broker services because to allow the broker to retain the payments "would encourage unlicensed persons to seek advance payments, thereby undermining the purpose of" the real-estate-broker licensing statute); Mascarenas v. Jaramillo, 111 N.M. 410, 414, 806 P.2d 59, 63 (1991) *921 ("As a matter of public policy, an unlicensed contractor may not retain payments made pursuant to a contract which requires him to perform in violation of the Construction Industries Licensing Act.").
On the same bases as articulated in the above-referenced annotation from American Law Reports, we conclude that the fact that the home builder in this case was not licensed, standing alone, is not a sufficient basis on which to require Fausnight to return the funds he has received from the Perkinses. We note as to the first four reasons stated in that annotation that Alabama's statute contains no provision expressly requiring an unlicensed home builder to refund moneys paid to it. To read the statute as containing such a provision would be to read into the statute a private cause of action for homeowners that easily could have been, but was not, expressed by the legislature in the statute. The statute expressly deprives the unlicensed home builder of the right to use Alabama courts to collect unpaid moneys otherwise owed it; it does not purport to provide home owners with a cause of action to obtain refunds of amounts paid to unlicensed home builders.
Further, in the statutory framework before us, not only is an unlicensed home builder unable to use Alabama courts to enforce its contracts related to residential home building, a home builder that engages in the trade without a license is subject to criminal sanctions, including up to a year's imprisonment and a criminal fine of up to $6,000, for the commission of a Class A misdemeanor. See § 34-14A-14 (providing that "[a]ny person who undertakes or attempts to undertake the business of residential home building" without holding the requisite license "shall be deemed guilty of a Class A misdemeanor"); §§ 13A-5-7 and -12 (setting forth the sanctions for commission of a Class A misdemeanor).[8] As other authorities have noted in such a context, the legal maxim expressio unius est exclusio alterius applies.
Moreover, in the circumstances presented here, we do not believe that creating an inequitable situation where one does not already exist is a proper use of the courts. As Judge Cardozo stated almost a century ago in Schank v. Schuchman, 212 N.Y. 352, 359, 106 N.E. 127, 129 (1914): "The law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive; it will not for that reason aid another in taking away from him that which good conscience entitles him to retain."
Based on the foregoing, we conclude that the trial court erred when it entered a summary judgment in favor of the Perkinses on their claim for reimbursement of the fees they had paid to Fausnight for constructing their house.

IV. Conclusion
Based on the foregoing, we hold that the trial court erred when it entered a partial summary judgment in favor of the Perkinses on their claim for restitution. Thus, we reverse that judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SEE and LYONS, JJ., concur specially.
*922 SEE, Justice (concurring specially).
I concur fully in the main opinion. I write simply to note that although "[i]t is well-settled law in this State that the interpretation of a statute begins with the plain language of the statute itself," Housing Auth. of Huntsville v. Hartford Accident & Indem. Co., 954 So.2d 577, 582 (Ala. 2006), the statute in this case is silent as to whether the Perkinses have a claim for restitution from Fausnight. When a statute is silent, this Court will look outside of the plain language of the statute to determine the intent of the legislature. See, e.g., Ex parte Baron Servs., Inc., 874 So.2d 545, 549 (Ala.2003) ("The statute is silent on the application of a marketability discount. Therefore, we are forced to look outside the language of the statute to determine what the Legislature intended."); Old Republic Sur. Co. v. Auction Way Sales, Inc., 733 So.2d 878, 880 (Ala.Civ. App.1997) ("The statute is silent as to whether it applies outside the territorial jurisdiction of Alabama; therefore, in our review, we must rely on the cardinal rule of statutory interpretation: to determine and give effect to the intent of the legislature as manifested in the language of the statute." (citing Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala.1996))).
LYONS, Justice (concurring specially).
I concur fully in the main opinion.
The question as to the adequacy of Fausnight's assertion of grounds for rejecting the Perkinses' claim for restitution in the trial court is a close one. However, in his opposition to the Perkinses' motion for a summary judgment, Fausnight correctly observed that whether restitution was available for a violation of § 34-14A-5, Ala.Code 1975, was a question of first impression. He then analogized this case to cases involving unlicensed general contractors and cited McRae v. Sawyer, 473 So.2d 1006 (Ala.1985), as authority for his argument that a remedy for recovery of the value of work performed is unavailable to the Perkinses. He then stated:
"Similarly, § 34-14A-14 provides yet another blow to a residential home builder who does not have a license. It is this statute which states an unlicensed home builder may not bring or maintain any action to enforce the provisions of any contract. As this Court is again reminded, [Fausnight is] not attempting to enforce any contract."
I agree with the conclusion in the main opinion that by this argument the trial court was sufficiently apprised of Fausnight's contention that § 34-14A-5 condemns only an action by him and does not go beyond that limitation and authorize an action by the Perkinses for restitution.
I also agree with the conclusion in the main opinion as to the adequacy of Fausnight's principal brief. With regard to restitution, Fausnight stated:
"A residential home builder, who does not have the license required, shall not bring or maintain any action to enforce the provisions of any contract for residential home building which he entered into. Code of Alabama (1975) § 34-14A-14. [The] Perkins[es] relied on this statute to seek a refund of payments that were paid to Fausnight for the construction of the home. However, the purpose of the statute is to prevent the builder from being able to enforce a contract if not properly licensed. The statute makes no mention of homeowners being able to seek a refund for failure to comply with the statute. In determining the meaning of a statute, the court looks to the plain meaning of the words as written by the legislature. DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala.1998). If the statute is unambiguous, then there is *923 no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Id.

"In the case at hand, (which appears to be one of first impression) Fausnight is not trying to enforce the contract. Therefore, § 34-14A-14 is not applicable because it does not mention any recourse the homeowners could take to seek a refund. The trial court erred by allowing [the] Perkins[es] to use this regulatory statute as a vehicle for compensation. See below for further discussion."
Fausnight's brief, pp. 12-13.
As to the variance between Homeland Insurance Co. v. Crescent Realty Co., 277 Ala. 213, 168 So.2d 243 (1964), and Ex parte Ledford, 761 So.2d 990 (Ala.2000), cases not cited by either party and dealing with a statute similar to § 34-14A-14, a review of the petition and briefs in Ex parte Ledford reveals that the party claiming restitution cited authority that merely precluded the unlicensed entity from seeking recovery, as opposed to going further and authorizing restitution of sums previously paid. The party opposed to restitution relied only on the defense of limitations and the contention that his activity had not subjected him to the requirement of licensure as a real-estate broker. In other words, the availability of the remedy of restitution in the event licensure was found to be necessary was not a litigated issue in Ex parte Ledford. For that reason, I consider the rule applied in Homeland Insurance Co., albeit applicable here only by analogy, to reflect the appropriate view to which we are led by the felicitous confluence of reason and stare decisis.
NOTES
[1] The complaint in this case names "Laurel Creek Log Homes," as well as Brian Fausnight, as a defendant; papers filed in this Court name "Laurel Creek Log Homes" as an appellant. From our review of the record, it appears that "Laurel Creek Log Homes" is merely the name under which Brian Fausnight, as an individual, does business and, thus, is not subject to suit or to the entry of a judgment for or against it.
[2] Fausnight takes the position in his brief on appeal that the trial court ruled against him on the Perkinses' fraudulent-suppression claim. The Perkinses expressly disagree and accordingly offer no argument as to this issue in their brief. Our review of the record, particularly of the trial court's order, leads us to conclude that the trial court resolved only that portion of the Perkinses' motion seeking a summary judgment on the restitution claim.
[3] The Perkinses contend that Fausnight waived his arguments on appeal relating to the claim for restitution by failing to make them below. Our review of the record convinces us that Fausnight adequately preserved for appellate review the issue of the propriety of restitution in this case.

In addition, the Perkinses contend that this Court should summarily affirm the trial court's partial summary judgment because of Fausnight's failure to observe all the requirements of Rule 28(a), Ala. R.App. P. We do not view the shortcomings of Fausnight's brief as warranting a summary affirmance. In particular, as to the Perkinses' contention that the brief does not contain a statement of facts compliant with Rule 28(a), we find that the factual statements contained in the brief sufficiently inform the Court of those facts necessary to dispose of the appeal.
[4] Act No. 2006-105, Ala. Acts 2006, effective May 1, 2006, amended § 34-14A-14 by, among other things, providing for administrative fines of up to $2,000 for each violation of Title 34, Chapter 14A.
[5] Alabama Code 1940 (Recomp. 1958), tit. 46, § 311(2), as amended, required individuals and entities to obtain a license from a board known as the "Alabama real estate commission" to "engage in the business, occupation, or calling of a real estate broker."
[6] We note that the Perkinses also cite Edwards v. Alabama Farm Bureau Mutual Casualty Insurance Co., 509 So.2d 232 (Ala.Civ. App.1986), for the proposition that a party can obtain a refund of payments made to another party not licensed as required by law. The Perkinses misconstrue Edwards. In Edwards, the Court of Civil Appeals held that the payor was entitled to a return of payments he had made to a creditor pursuant to a statute that specifically provided that a creditor "`shall have no right to receive or retain the principal or any finance charges'" if the creditor "`made an excess finance charge in deliberate violation or in reckless disregard for'" tit. 5, chapter 19, Ala.Code 1975. 509 So.2d at 239 (quoting Ala.Code 1975, § 5-19-19) (emphasis added).

The Perkinses also point out, as did the trial court, the fact that the Court of Civil Appeals in Thomas Learning Center, Inc. v. McGuirk, 766 So.2d 161 (Ala.Civ.App.1998), quoted the following passage from a New Mexico Supreme Court case:
"`As a matter of public policy, an unlicensed contractor may not retain payments made pursuant to a contract which requires him to perform in violation of the [general-contractor licensing] Act. This is true even if, as here, the consumer has knowledge that the contractor is unlicensed. The public policy behind the licensing requirement of the Act is so strong that the element of consumer knowledge is of no consequence in our decision.'"
766 So.2d at 174 (quoting Mascarenas v. Jaramillo, 111 N.M. 410, 414, 806 P.2d 59, 63 (1991)) (emphasis added in McGuirk). The Court of Civil Appeals in McGuirk relied on the New Mexico case for the concept embodied in the sentence from that opinion it emphasized. The Court of Civil Appeals did not have before it an issue regarding whether the contractor in that case should be required to disgorge payments it had received, and, accordingly, it did not rely on the first sentence in the quoted passage from the New Mexico case. We also note that only one judge of the Court of Civil Appeals joined the main opinion in McGuirk; three judges concurred only in the result.
[7] See also Southwestern Life Ins. Group v. Morehead, 245 Fed.Appx. 304, 306 (4th Cir. 2007) (not published in F.3d) (applying North Carolina law) ("This appeal presents the question of whether, under North Carolina law, a party to a fully executed contract may rescind it on the basis of the other contracting party's failure to comply with licensing and similar regulatory statutes, which statutes do not expressly create such a private right of action. North Carolina case law clearly and directly answers the posited question in the negative."); Food Mgmt., Inc. v. Blue Ribbon Beef Pack, Inc., 413 F.2d 716, 727 (8th Cir. 1969) (applying Iowa law) ("There is no provision under the Iowa registration statutes for the recovery back of money voluntarily paid under an architectural or engineering contract to an unlicensed party. To allow both retainment of services and recovery back of money paid is not necessary to effectuate the public policy of the licensing statutes, and there would be no inequitable harm to Blue Ribbon in not invoking restitution because, as found by the trial court, it obtained the service it had bargained for."); Comet Theatre Enters., Inc. v. Cartwright, 195 F.2d 80, 81 (9th Cir. 1952) (applying California law) ("There is no provision in the [contractor-licensing statute] that when the unlicensed persons have completely performed a contract for agreed services and the person so benefited voluntarily has paid the agreed consideration he may recover back the money so paid. Here to add to the two specific provisions, to make effective the licensing requirement, a right in Comet to retain the value of the services of the appellees and also to recover back the fair amount Comet had paid for its services is not necessary to effectuate the policy of the statute. This seems a case for the application of the rule expressio unius est exclusio alterius."); CitaraManis v. Hallowell, 328 Md. 142, 159, 613 A.2d 964, 972 (1992) ("[E]ven if the lease were unenforceable by the landlords, the tenants have received everything that they bargained for, and a necessary element justifying the remedy of restitution, i.e., unjust enrichment, is lacking."); Electrovoice Int'l, Inc. v. Sarasohn Adjusting Co., 567 N.Y.S.2d 568, 570, 149 Misc.2d 924, 927 (1990) ("[A] defendant who has violated a licensing statute will not be required to return compensation paid after completion of the job even though he would have been unable to sue upon the contract.").
[8] In 2006, the legislature amended § 34-14A-14 to add a provision for administrative fines of up to $2,000 per violation. See note 4, supra.