Eubanks Eubanks, Inc. ("E E"), and William L. Eubanks, Sr., E 
E's president and chief executive officer, appeal from a summary judgment entered by the Mobile County Circuit Court in favor of Colonial Pacific Leasing ("Colonial"), Coastal Leasing Finance, Inc. ("Coastal"), Robert Akridge, and Jim Coxe on E E's fraud claims arising from an equipment lease and Colonial's claim alleging that E E and Eubanks breached the lease and a related guaranty agreement. Colonial cross appeals from that portion of the trial court's judgment declining to award it attorney fees arising from its defense of E E's fraud claims. We affirm.
In June 1996, E E sued Colonial, Coastal, Akridge, and Coxe, alleging, among other things, that Akridge had told Eubanks, before Eubanks entered into a contract on behalf of E E with Colonial to lease a loader and a skidder for a three-year period, that E E could sell the loader and skidder before the lease expired and that such a sale would allow E E to terminate the lease early by "prepaying" the lease, without penalty, and to receive an interest-rate rebate. E E further alleged that Eubanks had justifiably relied upon Akridge's representations, that Eubanks had signed a form contract whereby E E agreed to lease a loader and a skidder from Colonial for three years, and that E E had later been denied permission to sell the loader and the skidder or to prepay its lease obligation without paying the entire interest amount provided by the contract. E E alleged claims of fraudulent misrepresentation, fraudulent concealment, and breach of warranty against the defendants. Colonial filed a claim, seeking damages and attorney fees based upon its allegations that E E had breached the parties' contract by not paying the agreed monthly installments of rent and that Colonial had incurred attorney fees recoverable under the contract; it named Eubanks as an additional party to its claim, based upon his agreement to guarantee E E's performance under the contract.
Colonial filed a motion for a summary judgment as to all claims against it, alleging that Coastal, Akridge, and Coxe were not its agents, and also seeking a summary judgment as to its own claim. E E and Eubanks filed a response in opposition, attaching excerpts from, among other things, the transcript of Eubanks's deposition. Colonial's summary-judgment motion was denied. Coastal, Coxe, and Akridge then filed a motion for a partial summary judgment concerning any claims E E might assert under the Alabama Deceptive Trade Practices Act, § 8-19-1 et seq.,[1] which motion was joined by Colonial; the trial court granted this motion.
Colonial filed renewed motions for a summary judgment as to E E's claims, alleging (1) that E E's reliance upon Akridge's alleged representations was unjustifiable; (2) that it had not suppressed any facts concerning the terms of the lease; (3) that the parol-evidence rule and *Page 439 
the merger doctrine barred E E's breach-of-contract claims; and (4) that E E's claims that it had suffered lost profits and business opportunities were too speculative and remote to be compensable. Both of these motions contained numerous references to Eubanks's deposition testimony, although only the pages referenced in the second motion (addressing lost profits and E E's breach-of-contract claims) were attached and appear in the record. Coastal, Akridge, and Coxe filed a motion adopting Colonial's arguments; in support of their motion, they adopted Colonial's evidentiary submissions and filed a brief containing numerous references to testimony in Eubanks's deposition, copies of which the brief indicates had previously been sent to the trial judge. E E and Eubanks filed a response in opposition.
On January 14, 1998, the trial court entered an order granting the defendants' motions for a summary judgment. In its order, the trial court recited numerous facts taken from Eubanks's deposition in support of its conclusion that E E's reliance was unjustifiable as a matter of law; it further concluded that the defendants were entitled to a judgment as a matter of law on E E's breach-of-warranty claim. The trial court's order specifically stated that Colonial's claim against E E and Eubanks remained pending, and the court invited the parties to file "appropriate materials" regarding this claim. E E's motion to reconsider this order was denied, without oral argument.
Colonial then filed a motion for a summary judgment as to the principal ($34,231.52) and interest amounts it contended were due on its claim. E E and Eubanks filed a response in opposition. The trial court entered an order granting Colonial's motion on April 6, 1998. E 
E and Eubanks then took an appeal to the Alabama Supreme Court; after that appeal was transferred to this court, pursuant to § 12-2-7(6), Ala. Code 1975, it was dismissed, on October 19, 1998, because the issue of attorney fees remained to be adjudicated. Eubanks Eubanks, Inc. v. Colonial Pac. Leasing, (No. 2970936) (Ala.Civ.App. 1998) (table).
Colonial filed a petition in the trial court seeking an award of attorney fees it claimed to have incurred during the litigation between it and E E and Eubanks; E E and Eubanks filed a response opposing Colonial's petition. The trial court indicated that it would award only "reasonable attorneys' fees incurred in the collection proceedings under the lease guaranty, " and, pursuant to a stipulation between Eubanks and Colonial concerning this amount, the trial court awarded Colonial $4,307. 25.
E E and Eubanks again appealed to the Alabama Supreme Court, and Colonial cross-appealed. The appeals were transferred to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
 I. The Appeal
E E and Eubanks have appealed from the trial court's summary judgment in favor of Colonial and the other defendants on E E's fraud claims[2] and in favor of Colonial on its claim against E E and Eubanks. Our standard for reviewing summary judgments is settled:
 "A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. R.Civ.P.,] the nonmovant may not rest upon mere allegations or denials of his *Page 440 
pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required."
Sizemore v. Owner-Operator Indep. Drivers Ass'n, Inc., 671 So.2d 674,675 (Ala.Civ.App. 1995) (citations omitted).
Because E E filed its action before March 14, 1997, its fraud claim (as well as its and Eubanks's fraud defense to Colonial's claim) must be tested under the "justifiable reliance" standard that was in effect until that date. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Under that standard, a plaintiff, "given the particular facts of his knowledge, understanding, and present ability to fully understand the nature of the subject transaction and its ramifications, " is said not to have justifiably relied upon a representation "if that representation is one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." E.g., Hurst v. Nichols Research Corp., 621 So.2d 964, 968-69 (Ala. 1993). This test has two components: (1) the plaintiffs capacity to know what he or she is undertaking, and (2) the conspicuousness of the falsity of the particular representation.
In its order granting the defendants' summary-judgment motions addressed to, among other things, E E's fraudulent-misrepresentation claims, the trial court made several findings of undisputed fact: (1) that Eubanks "is a competent, literate adult who has been involved in the timber business for the majority of his business career and has entered into numerous credit transactions involving other types of heavy equipment"; (2) that Eubanks had negotiated with Coastal representatives for several weeks concerning the lease of the loader and skidder before E E agreed to the contract and Eubanks agreed to the guaranty; (3) that Eubanks had been given "ample time" to read over the documents before signing them, but "willfully refused" to do so; and (4) that the lease contract (and the guaranty agreement) required E E to pay $1081.20 per month for 36 months and contained no provision for prepayment. The trial court's basis for these findings is the transcript of the deposition of Eubanks, and its order cites numerous pages of that transcript (i.e., pp. 10, 49, 27-30, 36-37, 44-45, 48-49, 51, 60, 65-68, 70-71, 115-21, 125, 179). However, the entirety of this transcript does not appear in the record; the sole portions of Eubanks's deposition that have been transmitted are attachments to various sum| mary-judgment motions and briefs (i.e., pages 33-37, 100, 107, 187-89).
"Where all the evidence is not in the record, it will be presumed that the evidence was sufficient to sustain the verdict or judgment." Berryhill v. Mutual of Omaha Ins. Co., 479 So.2d 1250, 1251 (Ala. 1985) (affirming summary judgment where the record did not contain depositions and exhibits upon which the trial court based its judgment); accord; Cofer v. Town of Good Hope, 655 So.2d 1028, 1029 (Ala.Civ.App. 1995). Thus, we presume that the trial court's statements concerning Eubanks's experience and capacity to understand the lease transaction are supported by Eubanks's deposition testimony and that no genuine issue of material fact exists as to these matters.
With respect to the conspicuousness of the falsity of Akridge's alleged representations that E E would be able to prepay its obligations under the lease contract without payment of interest, we note that the lease contract signed by Eubanks on behalf of E E, but which Eubanks refused to read, provided that E E "SHALL NOT ASSIGN THIS LEASE OR SUBLEASE THE EQUIPMENT . . . OR OTHERWISE DISPOSE OF THE EQUIPMENT COVERED HEREBY' without obtaining Colonial's "PRIOR WRITTEN CONSENT" (capitalization in original). Concerning Akridge's alleged representation that E E would, alternatively, be able to sell the loader and skidder, it should be noted that the lease *Page 441 
contract provides to the contrary: it declared that it was "NOT CANCELABLE OR TERMINABLE BY LESSEE" (i.e., E E), and provided that "[r]ental payments shall be in the amounts and frequency as set forth on the face of the Lease or any Schedules hereto." The lease contract also contains several conspicuous completed blanks specifying that the contract would extend for 36 months for a monthly rent of $1081.20. These terms directly contradict any implication that they would allow for termination of the lease contract by prepayment or for any unilateral power on the part of the lessee of the equipment leased.
Under the circumstances of this case, we conclude that Eubanks's agreeing to the lease contract without reading its terms renders his reliance upon Akridge's alleged representations unjustifiable. Had Eubanks, an experienced businessman, read the contract, he would have been aware that E E did not possess the unconditional power to sell the leased equipment or to prepay the rent set forth in the contract.[3] Therefore, the trial court did not err in determining that, as a matter of law, E E could not prevail on its fraudulent-misrepresentation claims. Similarly, E E and Eubanks's response to Colonial's claim, that the contract was due to be judicially rescinded or reformed because of Akridge's alleged fraud, also fails because of their failure to demonstrate justifiable reliance. See Brabner v. Canton, 611 So.2d 1016, 1018 (Ala. 1992) (affirming judgment on jury verdict in favor of defendant in rescission action despite claim of error in giving "reasonable reliance" instruction).
Finally, E E and Eubanks contend that the trial court erroneously denied their "motion to reconsider, " which restated at length their contentions concerning the justifiability of E E's reliance, without holding an oral hearing pursuant
to their request. They contend that Rule 59(g), Ala.R.Civ.P., which provides that post-judgment motions under Rule 59 "shall not be ruled upon until the parties have had opportunity to be heard thereon, " mandates reversal of the judgment. However, this argument fails in two respects. First, the "motion to reconsider" was not a post-judgment motion pursuant to Rule 59 (and thereby was not subject to Rule 59(g)) because it was filed after the trial court had entered only a partial summary judgment, rather than a final judgment deciding the merits of all of the parties' claims. See Thomas v. Swindle, 676 So.2d 333, 335
(Ala.Civ.App. 1996); Rule 54(a), Ala.R.Civ.P. (defining "judgment"). Second, even were we to consider the "motion to reconsider" as a post-judgment motion to which Rule 59(g) is applicable, we would conclude that its denial without a hearing constituted harmless error because (1) as we have demonstrated, there was no probable merit to the arguments of E E concerning justifiable reliance; and (2) the grounds for the relief sought and the arguments in support thereof were set forth at length in the body of the motion. Historic Blakely Auth. v. Williams, 675 So.2d 350, 352 (Ala. 1995).
 II. The Cross-Appeal
Colonial contends that the trial court erred in failing to award attorney fees it incurred as a result of E E's fraud claims. While the trial court did award attorney fees to Colonial amounting to $4,307.25, this award represents only the amount of attorney fees attributable to Colonial's claim against E E and Eubanks and to which the parties stipulated. Colonial argues that the trial court did not properly interpret the fee provision in the parties' lease contract, which states that "[i]n the event of any legal action with respect to this lease, the prevailing party *Page 442 
in any such action shall be entitled to reasonable attorney fees."
This court has previously construed a similar contractual provision. In Tomlinson v. G.E. Capital Dealer Distr. Fin., Inc., 646 So.2d 139
(Ala.Civ.App. 1994), a lessor sought and obtained an attorney-fee award of $48,113.97 from the trial court after prevailing on claims brought by its lessee alleging, among other things, fraud and misrepresentation, and on its own counterclaims for breach of the parties' lease agreement. This figure represented all of the lessor's fees, not just those fees incurred in connection with its counterclaim. In the parties' lease agreement in Tomlinson, the lessee agreed to pay the lessor's attorney fees that the lessor incurred "in enforcing any of the terms, conditions, or provisions of this lease." This court reversed the trial court's award, reasoning as follows:
 "Fraud is a tort and, thus, an action ex delicto. Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973). 'Ex delicto' is defined in Black's Law Dictionary (6th ed. 1990) as follows: "'From a delict, tort, fault, crime or malfeasance. In both the civil and the common law, obligations and causes of action are divided into classes — those arising ex contractu (out of a contract), and those ex delicto. The latter are such as grow out of or are founded upon a wrong or tort.'
 "In light of the fact that the defense of a tort cannot be a part of the "enforcement of any of the terms, conditions, or provisions of this lease,' the trial court erred when it awarded $48,113.97 in attorney fees and costs."
646 So.2d at 141. We reversed and remanded "for a determination of which attorney fees and costs relate to the counterclaim." Id.
Colonial correctly notes that the clause in the parties' lease contract uses language that is more encompassing than that construed in Tomlinson. Facially, this is correct. While the Tomlinson lease agreement provided for the recovery of fees incurred by the lessor in "enforcing" the terms of that lease agreement, which can be read as encompassing only offensive claims, the lease contract in this case provides for the recovery of reasonable attorney fees by a prevailing party in the event of "any legal action, " which arguably encompasses the defense of such actions.
However, like the Tomlinson agreement, the lease contract limits recovery of fees to those incurred in litigation "with respect to this lease" (emphasis added). As Tomlinson noted, fraud actions such as that brought by E E sound in tort and not in contract. E E's claims of fraud inducing the making of the parties' lease contract were not based upon any language of the contract, but were based upon the allegedly wrongful pre-contractual conduct of Akridge. Accord, Harbor Ins. Co. v. Blackwelder, 554 So.2d 329, 334 (Ala. 1989) (claim of fraud in the inducement of an alleged employee-benefit plan did not "relate to" the plan so as to trigger federal preemption of state-law fraud action), cert. denied, 495 U.S. 948, 110 S.Ct. 2209, 109 L.Ed.2d 535 (1990); see also HealthAmerica v. Menton, 551 So.2d 235, 239-40 (Ala. 1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990). We thus conclude that Colonial's defense of E E's fraud claims was not litigation "with respect to" the parties' lease contract, and that the trial court correctly limited Colonial's attorney-fee award to its fees respecting its successful prosecution of its claim alleging breach of the lease contract.
 Conclusion
Based upon the foregoing facts and authorities, the trial court's judgment is due to be affirmed in all respects.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] In the "brief description" of E E's claims in its "motion to set and certificate of readiness," E E averred that it was seeking relief for "Deceptive Trade Practices."
[2] No error is alleged concerning the summary judgments disposing of E E's fraud-in-the-inducement and breach-of-warranty claims and of any Deceptive Trade Practices Act claims E E might have asserted.
[3] Alabama law does not allow for the prepayment of an obligation to make installment payments to a creditor, in the absence of express contractual language permitting prepayment. See Ex parte Brannon,683 So.2d 994 (Ala. 1996). *Page 443