PITTMAN, Judge.
This appeal arises from a dispute stemming from a lease contract entered into between Medical Park Station, LLC (“the lessor”), and Southern Food Services, LLC, whose position as lessee under that contract was later assumed by 72 Madison, LLC (“the assignee”). The assignee sued the lessor in April 2014, seeking reformation of the lease contract and an award of compensatory and punitive damages, on theories of fraud and mistake, based upon the lessor’s failure or refusal to pay a $40,000 allowance for tenant improvements that, the assignee asserted, had been negotiated as a term of the lease contract. The lessor answered the complaint, denying the assignee’s right to relief, and demanded an award of attorney fees pursuant to another provision of the lease contract. The lessor moved for a summary judgment in March 2015, after which the assignee filed a response in opposition and the lessor filed a reply memorandum; the trial court did not initially rule on that motion. Rather, on July 7, 2015, after holding an ore tenus proceeding, the trial court granted the lessor’s sumrñary-judgment motion; however, that court entered an order on July 8, 2015, setting aside the summary judgment as having been entered in error. *455 Subsequently, the trial court entered a judgment in favor of the assignee in which that court determined that the lessor had wilfully misrepresented and suppressed material facts so as to warrant relief on the basis of the law of fraud and deceit; that court awarded compensatory damages of $40,000 plus accrued interest of $3,893.66 and punitive damages of $20,000. The lessor timely appealed, and its appeal was transferred to this court pursuant to § 12-2-7(6), Ala.Code 1976.
Our standard of review is as follows:
“““[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”” ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007) (citations omitted; quoting earlier cases).
The record reveals that, in August 2011, a letter of intent (“the letter of intent”) was drafted by a commercial-lease broker, Southpace Properties, Inc. (“the broker”), that was addressed to Allen Hawkins at Terra Equities, LLC (“Terra”), a Birmingham-based real-estate development and leasing entity that Hawkins owned and operated; Hawkins made various handwritten changes to the letter of intent before executing it on behalf of Terra. The letter of intent “summarize[d] some of the terms and conditions pursuant to which” an unnamed prospective “tenant”—identified in the letter only as a “qualified ... franchisee” of Dunkin’ Brands, Inc., a franchiser of pastry bakery/restaurants that trade under the name “Dunkin’ Donuts”—“would consider entering into a lease” at a proposed 34,000-square-foot shopping center known as “Medical Park Station” that was to be located in Madison County on land owned by the lessor, ie., Medical Park Station, LLC, a business entity of which Hawkins was also the part owner and principal operator. The letter of intent further indicated, in pertinent part, that the “landlord” under the lease would receive a minimum rental rate per square foot of leased space during the first five years of the lease; that the landlord would not sell or lease space in the center to “any entity whose primary business is the manufacture or sale of coffee, donuts, bagels, pastry or bakery products”; and that the landlord would pay the tenant a “Tenant Improvement Allowance” (“TIA”) of $40,000 “for the cost of constructing ... leasehold improvements.” Finally, an exhibit to the letter of intent noted that the broker was “providing a good and valuable service in procuring” a tenant “who is interested in occupying space at” Medical Park Station and provided that a commission would be payable to the broker “should a lease or other occupancy agreement be consummated” by the tenant as to Medical Park Station.
At the time that the letter of intent was prepared, Terra was in the final stages of arranging for the leasing of space in a shopping center located in Trussville to another Dunkin’ Donuts franchisee, and a draft lease contract had been prepared through negotiations in which Dunkin’ Brands, Inc., Hawkins (and his counsel), and that franchisee had each participated. After Edward W. Robinson, the principal of both Southern Foods Services, LLC, *456 and the assignee, had been approved by Dunkin’ Brands, Inc., as a franchisee for the north Alabama area, and had begun working with Dan Tavares, a. development manager in the employ of Dunkin’ Brands, Inc., on securing a place to operate a “Dunkin’ Donuts” brand bakery/restaurant, Tavares telephoned Hawkins and arranged a meeting between Hawkins and Robinson regarding a potential lease of property at Medical Park Station.
In October 2011, Tavares sent an electronic-mail message to Robinson and his son indicating that they might be able to “save ... a good amount of legal fee’s [sic] on the lease” of a retail space in which to operate the planned Dunkin’ Donuts bakery/restaurant by “simply copying]” the Trussville Dunkin’ Donuts lease contract “as it is with the same landlord,” alluding to the fact. that entities associated with Hawkins were involved in both the Trussville lease and the potential Madison County lease. Tavares also forwarded a draft electronic copy of the Trussville lease contract to Robinson at that time. In addition, in December 2011, Ryan Crumley, a regional development/construction manager for 'Dunkin’ Brands, Inc., sent an electronic-mail message addressed to Robinson and his son (with a courtesy copy directed to Hawkins) that attached a draft copy of the “lease template that we negotiated with Terra for the Trussville deal” and directed Robinson and his son to “[pjlease begin reviewing and incorporating the Madison deal specific info” and “deal directly with .,. Hawkins regarding finalizing the terms of the” pertinent lease contract. Neither of the two draft lease contracts sent by representatives of Dunkin’ Brands, Inc., to Robinson and his son contained a provision requiring a TIA, and both were single-spaced.
At trial, Robinson testified that he and Hawkins had begun negotiating potential lease terms in December 2011 or January 2012; Robinson also testified that he had retained Craig Paulus, a Huntsville lawyer, to assist him in creating business entities and advising him on lease negotiations, although he added that Paulus had never been “commission[ed] to generate the drafting of a” lease contract. Robinson testified that he would typically “communicate change[s]” in the proposed lease contract to Hawkins primarily by telephone communications during their negotiations; he also admitted that he had signed the signature sheet of the first draft sent to him and had sent it back to Paulus, whereupon Paulus had informed Robinson that the draft lease contract did not contain any provision for a TIA. Robinson testified that he had then orally pointed out to Hawkins the absence of a TIA provision in the draft lease contract, and he stated that Hawkins had thereafter forwarded to him by electronic mail a different draft lease contract, a double-spaced document that was introduced into evidence at trial as Plaintiffs Exhibit 5, containing a TIA provision. However, Robinson admitted during cross-examination that he had no documentary proof that Plaintiffs Exhibit 5 had actually originated from Hawkins, and a substantially similar double-spaced draft lease contract containing a TIA provision—which was introduced into evidence as Defendant’s Exhibit 4 and which was named “Working Copy of Hwy 72 Lease Madison (l).docx”—was shown to have been taken from a disk drive on one of Paulus’s computers, to have been typed by an “Author” named “Jason,”[1] and to have *457 been last modified by Paulus on February 17, 2012.
On March 6, 2012, Hawkins sent an electronic-mail message to Robinson and his son that attached what Hawkins identified as the “last version of the” lease contract that he had for Robinson and his son “to reference if needed”; Hawkins also mentioned in his message the impact of a proposed change to the section of the draft lease contract pertaining to exclusivity in light of a potential new tenant at Medical Park Station, a restaurant known as “Blue Plate Café” that was identified as customarily serving breakfast items. The draft lease contract forwarded by Hawkins was, like the previous versions stemming directly from the Trussville lease-contract draft, single-spaced and lacked a TIA provision, but the draft contained “redlining” indicating the proposed new exclusivity terms. On March 9, 2012, Paulus, acting on behalf of Robinson, sent a letter to Hawkins via electronic mail stating that, although Pau-lus’s office was reviewing the March 6, 2012, draft lease contract, Southern Foods expressly objected to the provisions of that draft pertaining to exclusivity. A flurry of electronic-mail communications involving Robinson, Paulus, Crumley, and Hawkins then ensued leading to an agreement between Hawkins and Robinson as to the rent and exclusivity provisions; in none of those messages was the absence of a TIA provision in the March 6, 2012, draft lease contract mentioned. Ultimately, on April 4, 2012, a lease contract naming as parties thereto the lessor and Southern Food Services, LLC, “d/b/a Dunkin’ Donuts” was executed; that contract did not contain a TIA provision but did contain an integration term providing that the contract “contain[ed] the entire agreement between the parties” and that “any agreement [thereafter made [would] be ineffective to change, modify or discharge [the contract] in whole or in part unless such agreement [wa]s in writing and signed by both parties.”
The lease contract, as entered into by the lessor and Southern Food Services, LLC, was the subject of two subsequent amendments, each labeled as an “addendum” to the contract. The first amendment, executed by the parties on October 18 and October 19, 2012, modified certain terms of the lease pertaining primarily to the delivery date of the leased premises and the amount of rental charges per square foot; that amendment contained an express affirmation of the lease contract “with all rights and obligations in full force and effect.” A second amendment, executed by the parties on September 4, 2013, pertained primarily to the delivery date of the leased premises and to waiver of certain rights of termination; however, that amendment also contained affirmations by Southern Food Services, LLC, that the lease contract remained in full force and effect and that “as of the date of this Second Amendment [the lessor] [wa]s not in default of any term or condition of the” lease contract. On the same day that the second amendment was executed, Southern Food Services, LLC, assigned its interest in the lease contract to the assignee. After that assignment, Robinson telephoned Hawkins to request disbursement of tenant-improvement moneys, at which time Hawkins directed Robinson to consult the lease contract as to the absence of any provision for a TIA therein. The assignee, following an exchange of letters between an attorney at Paulus’s law firm and Hawkins and his attorneys, brought the civil action from which the current appeal arose.
In its brief on appeal, the lessor asserts that the claims asserted by the assignee in its complaint sounding in fraud are barred by the absence of the common element of reasonable reliance. “To recover in a fraud action filed after March 14,
*458 1997, a plaintiff must prove that he or she reasonably relied on the defendant’s alleged misrepresentation.” Alfa Life Ins. Corp. v. Green, 881 So.2d 987, 991 (Ala. 2003) (emphasis added); see also id. at 992 (quoting Ex parte Household Retail Servs., Inc., 744 So.2d 871, 879 (Ala.1999), for the proposition that “ ‘a plaintiffs ... “reasonable reliance” ... is an essential element of a suppression claim’”). The date referred to by our supreme court in Green denotes when Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997), was decided. Under Foremost and its progeny, “ ‘ “it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one’s own interests,”’” and, as our supreme court has noted, “ ‘ “the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests”’”; thus, as our supreme court has held, “ ‘ “[i]f the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.” ’ ” Gant v. Azalea City Credit Union, 69 So.3d 880, 883 (Ala.Civ.App.2011) (quoting AmerUs Life Ins. Co. v. Smith, 5 So.3d 1200, 1207 (Ala.2008), quoting in turn Torres v. State Farm Fire & Cas. Co., 438 So.2d 757, 758-59 (Ala.1983)). Further, the reasonable-reliance standard “ ‘imposes ... on a plaintiff a “general duty ... to read the documents received in connection with a particular transaction,” together with a duty to inquire and investigate’”; thus, as a matter of law, “ ‘a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon’ ” statements “ ‘that contradict the written terms in the documents.’ ” Gant, 69 So.3d at 883-84 (quoting AmerUs Life Ins. Co., 5 So.3d at 1208, quoting in turn Foremost, 693 So.2d at 421). After a review of the testimony and exhibits admitted into evidence at trial, we are constrained to agree with the lessor.
In this case, the record reflects that the parties to the lease contract started the drafting process as to the lease contract using a form suggested by Dun-kin Brands, Inc., that did not include a TIA provision, and the assignee adduced testimonial evidence of, at most, a single instance wherein Hawkins might have sent a draft of the lease contract to Robinson that included a TIA provision in February 2012. Further, although the assignee notes that the March 6, 2012, electronic-mail message from Hawkins contained a draft lease contract that included redlining only of proposed provisions pertaining to exclusivity (rather than highlighting any “missing” TIA provisions), that draft was a single-spaced document that bore more resemblance to the draft lease contract initially circulated by Dunkin’ Brands, Inc., and Hawkins than it did to Plaintiffs Exhibit 5. Regardless of the content or provenance of those preliminary draft versions, however, the fact remains that Robinson, after having retained legal counsel to protect his interests and having been informed of the absence of a TIA provision in an earlier draft, executed on behalf of Southern Food Services, LLC (the assign-ee’s predecessor in interest), a lease contract in April 2012 that contained no TIA provision.
Thus, to the extent that the trial court awarded compensatory and punitive damages to the assignee on theories of fraud,[2] its judgment cannot stand in light of the capability of Robinson and his counsel to read and understand the draft documents presented by Hawkins after February 2012 that undisputedly did not contain a TLA provision, and Robinson’s claimed
*459 reliance upon a belief that a TIA provision had been included in the final lease contract was directly contradicted by the written terms in the March 6, 2012, draft and the April 4, 2012, final version so as to be unreasonable. This is not a case in which a party labored under a medical disability preventing review of pertinent documents, such as Massey Automotive, Inc. v. Norris, 895 So.2d 215 (Ala.2004), nor did the assignee base its fraud claims upon sup-pressions of fact after the parties’ contractual relationship had been formed so as to render Bethel v. Thorn, 757 So.2d 1154 (Ala.1999), on point.
Finally, we reject the assignee’s contention that the alternative remedy of reformation of the lease contract would be appropriate in lieu of the damages awarded by the trial court’s judgment. As we held in Eubanks & Eubanks, Inc. v. Colonial Pacific Leasing, 757 So.2d 437, 441 (Ala.Civ.App.1999), a claim seeking reformation or rescission based upon an alleged fraud must suffer the same fate as a claim for damages stemming from that same alleged fraud when the requisite reliance element is shown to be missing. Further, as noted by the lessor in its brief, the principal authority relied upon by the as-signee, the federal district court decision in Buckmasters, Ltd. v. Action Archery, Inc., 915 F.Supp. 1188 (M.D.Ala.1996), was decided before Foremost, and, in its holding as to reformation, the federal court expressly relied upon caselaw decided under the now-abrogated (and subjective) “justifiable reliance” standard (i.e., Valley Props., Inc. v. Strahan, 565 So.2d 571 (Ala. 1990)).[3]
Based upon the foregoing facts and authorities, the judgment of the trial court awarding the assignee compensatory and punitive damages is reversed.[4] The cause is remanded for that court to enter a judgment in favor of the lessor and to assess costs pursuant to Rule 54(d), Ala. R. Civ. P.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. Paulus admitted at trial that an attorney named Jason had previously worked at his office.

. Although the trial court also refers to "deceit” in its judgment, we note that a claim of *459 deceit differs from a general claim of fraud only with respect to the state of mind of a party alleged to have defrauded another: “An action [alleging] deceit, under [Ala.Code 1975,] § 6-5-103 and § 6-5-104, results from either a willful or reckless misrepresentation or a suppression of material facts with an intent to mislead.'' Whitlow v. Bruno's, Inc., 567 So.2d 1235, 1241 (Ala. 1990). Because Robinson's reliance was unreasonable under the circumstances presented, the state of mind of the lessor is immaterial.

. Valley Properties was expressly overruled on another point in White Sands Group, L.L.C. v. PRSII, LLC, 32 So.3d 5 (Ala.2009).

. Our conclusion regarding the absence of reasonable reliance obviates the necessity of considering whether reversal would be compelled by the integration clause in the lease contract or by the reaffirmation by Southern Food Services, LLC, of the lease contract in the first and second amendments thereto.